**DALTON STEAMSHIP CORPORATION, Appellant,**

v.

**W. R. ZANES & COMPANY, Appellee.**

No. 16287.

Court of Civil Appeals of Texas.

Fort Worth.

Feb. 2, 1962.

Rehearing Denied March 2, 1962.

Baker, Botts, Andrews & Shepherd, Gene T. Bonner and B. D. McKinney, Houston, for appellant.

Bowyer & Thomas, and Richard C. Bexten, Dallas, for appellee.

MASSEY, Chief Justice.

Plaintiff, W. R. Zanes & Company, brought suit against defendant, Dalton Steamship Corporation, upon a cause of action which we believe should properly be termed breach of contract. Judgment was for plaintiff and defendant appealed.

Judgment reformed and affirmed.

Plaintiff was a freight forwarder. It was essentially a factor in view of the services it performed and obligations it discharged in behalf of its principal. The principal, as applied to the transaction in question, was a firm known as CASCO. The property in question as applied to this case was some 220 drums of tallow which CASCO had sold or was selling to a firm which may be referred to as Sovereign. Plaintiff was in some respects the factor or agent for Sovereign, but as applied to the situation in this case plaintiff's action in connection with its agency for Sovereign was never instituted, the time for any performance having never arisen. At least the effect of the findings and judgment of the trial court establishes such as the fact, and

from our examination of the record the action of the trial court found adequate support therein and will not be disturbed.

Defendant was a steamship agent. For purposes of this case a steamship agent is a person, firm or corporation which acts as an agent for ships of its various principals when in port, making arrangements as necessary to keep the ships fueled, supplied, and cargoed. Defendant dealt with plaintiff in connection with the 220 drums of tallow, the objective of the transaction being for such tallow to be delivered by plaintiff, in behalf of CASCO,—to Sovereign,—to defendant in behalf of a steamship it represented, with the objective that the tallow be shipped over the ocean.

At time the tallow was about to arrive in Houston, Texas, at the port where it was intended that it be taken on the ship for ocean transport, plaintiff discovered that CASCO was experiencing financial difficulties. CASCO was indebted to plaintiff as the result of prior transactions having similarity to that involving the 220 drums of tallow, in the sum of $1,237.14. CASCO was or became indebted to plaintiff on account of fees and expenses paid, commissions, etc., in the further sum of $306.55. The total of CASCO's indebtedness thereby became the amount of $1,543.69.

Plaintiff decided that it would be wise to take steps to protect itself. It desired to handle matters so that it would be enabled to collect the full amount owed it by CASCO. It entered into contract with defendant with the intent to accomplish such objective and to delay delivery to Sovereign pending the collection of the $1,543.69. Obviously the intent was to maintain and preserve the plaintiff's constructive "possession" of the tallow. Plaintiff handed its "delivery order" to defendant, with the following stated on its face: "Note to Dalton SS: When this deliver is completed a *negotiable dock* receipt is to be issued in the name of CASCO Chemicals Company for the account of the shipper and *returned to W. R. Zanes & Company.* No

other dock receipt is to be issued either negotiable or non-negotiable." A Mr. Pruitt, for defendant, orally agreed with Mr. Wolf, for plaintiff, that the bill of lading would not be issued without surrender of the "dock receipt" for the tallow in question, issued by the defendant upon its receipt of the tallow. The "dock receipt" issued by the defendant upon arrival of the tallow bore printed language which read, "Ocean bill of lading covering this shipment to be issued only upon surrender of this Dock Receipt and cargo to be covered with insurance by shippers."

Defendant, in breach of its agreement with plaintiff, did release the drums of tallow, and it was taken on board ship and well out to sea when plaintiff discovered the fact. Plaintiff's "possession" was defeated no less than in a case of theft. Although the circumstances were never explained, Sovereign received "Ocean Bill of Lading" to the tallow from or through the agency of the defendant. Plaintiff tried to collect its debt from CASCO, but by such time CASCO was insolvent and being operated by a creditor's committee. Plaintiff was unable to collect.

█ As applied to the 220 drums of tallow plaintiff had a common law factor's lien in the amount of $306.55. It is true that the total owed plaintiff, and which he believed would have been collected had defendant continued to hold the tallow as agreed, was $1,543.69, with $1,237.14 of such indebtedness accrued in prior transactions. If plaintiff had a written agreement with CASCO giving it the right to assert a lien upon the 220 drums of tallow, it neither plead nor proved such fact. In such circumstances plaintiff's lien would have been worth $1,543.69 if the tallow was worth that much, although it was never shown to have had such value, under provisions of statute. Vernon's Ann.Tex.Civ.St., Title 90 "Liens", Art. 5506c, "Lien upon merchandise in favor of factor advancing money." Having shown no such agreement with CASCO it will be presumed that plain-

tiff's lien upon the 220 drums of tallow was a mere common law lien.

 At common law the debt must have been incurred for some service or work rendered by claimant on or in connection with the property against which the lien is asserted and cannot extend to and include indebtedness otherwise accrued between the parties even though it might have accrued under circumstances which created the right of common law lien in the claimant as to other property.

 Plaintiff's damages are to be measured by the value of the thing lost through the breach of contract on the part of the defendant. The thing lost was the lien, the value of which was $306.55. The $1,237.14 indebtedness owing to plaintiff by CASCO was an unsecured debt. Absent any provision of contract between plaintiff and CASCO the former would have no right to hold the tallow as against the latter in any hypothesized dispute between the parties (plaintiff and CASCO) and would have been compelled to yield up possession of the tallow upon a tender of $306.55. Although it might be that but for the defendant's breach of contract CASCO would have paid plaintiff its entire debt, in order to avoid delay and make certain that delivery of the tallow was made to its purchaser, nevertheless the law would not take cognizance of that possibility. Rather must we consider what the law would have decreed and compelled as fixing the rights of the parties.

 The trial court erred in rendering judgment in favor of plaintiff and against defendant for attorney's fees. Plaintiff insists that V.A.T.S., Art. 2226, "Attorney's fees", entitled it to judgment for such fees as against CASCO under the theory of "labor done, material furnished", etc., and that defendant became liable therefor in the place and stead of CASCO under the circumstances of the case. Provisions of the Article may not be so extended. Furthermore, defendant's liability to plaintiff is for damages for breach of contract of a type where no existing statute makes provision for any additional award of attorney's fees.

Judgment is reformed so as to decree that W. R. Zanes & Company have and recover of and from Dalton Steamship Corporation its damages in the amount of $306.55, with legal interest from the date of the judgment in the trial court.

As so reformed judgment is affirmed.

Costs of appeal are to be adjudged equally against the parties.