**The LONE STAR PARTNERS, Appellant,**

**v.**

**NATIONSBANK CORPORATION, et al, Appellees.**

**No. 06–94–00032–CV.**

Court of Appeals of Texas, Texarkana.

Dec. 14, 1994.

Rehearing Overruled Jan. 10, 1995.

---

Carl David Adams, Law Offices of Carl David Adams, Robert H. Holmes, The Holmes Law Firm, Dallas, for appellant.

George D. Lamb, III, Catharine Haynes, Baker & Botts, Dallas, for appellees.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

CORNELIUS, Chief Justice.

Lone Star Partners appeals from an adverse summary judgment in its suit against NationsBank Corporation (NCNB) and others. Lone Star sued NCNB for damages arising from alleged fraudulent acts by NCNB in its successful acquisition of the assets of First RepublicBank Corporation. Lone Star was an unsuccessful bidder for First Republic's assets, and it contended in its suit that NCNB used misrepresentations and concealed information to make the winning bid.

Lone Star was formed in May of 1988 for the purpose of acquiring First Republic's assets. First Republic's failure was imminent, and the Federal Deposit Insurance Corporation (FDIC) was in the process of restructuring and recapitalizing First Republic by accepting acquisition bids from various banks and investor groups. Lone Star employed several professional firms to help prepare its bid, including the accounting firm of Price Waterhouse & Company and the investment banking firm of Bear Stearns & Company.

Lone Star says that, because it knew that NCNB was also a client of Price Waterhouse, it questioned Price Waterhouse partners

about possible conflicts of interest. Price Waterhouse officials allegedly told Lone Star that there was no conflict because NCNB, which had earlier submitted a bid for First Republic, had changed its mind and was not going to bid on the assets of the failed bank.

Lone Star alleges that, after employing Price Waterhouse and while formulating its bid, it sought Price Waterhouse's professional opinion on whether First Republic's massive losses could be offset against taxes and used to help structure its bid, thereby reducing its bid from a $1.5 billion range to a $250 million to $300 million range. Lone Star alleges that Price Waterhouse told Lone Star that, in its opinion, such tax benefits were not available for use, even though Price Waterhouse then knew that NCNB had a tax letter from the Internal Revenue Service indicating that it could offset those losses. NCNB did use the tax offsets to structure its winning bid.

In June of 1988, Lone Star obtained FDIC permission to review records and data at the FDIC building in Washington, D.C. Lone Star sent representatives to review the records during a weekend in late June. Toward the end of the weekend, it learned that one of the members of this group gathering confidential information was Hugh L. McColl, III, employed by Bear Stearns and son of Hugh L. McColl, Jr., then the Chairman of the Board of NCNB. Lone Star says it questioned McColl about possible conflicts of interest and was again assured that NCNB had no interest in First Republic and had withdrawn its bid. As a result of these reassurances, Lone Star continued to discuss confidential matters concerning its proposed bid among the members of the group reviewing the FDIC records, including the fact that it had successfully obtained financing for its bid from Dresdner Bank of West Germany. Lone Star notes that it was later reported in the Dallas Morning News that NCNB's bid was being backed by this same bank.

On July 29, 1988, all the Texas subsidiary banks of First Republic were declared insolvent, the FDIC became their receiver, and NCNB was declared the winning bidder for the assets. As noted, Lone Star claims that NCNB's winning bid was modeled after its (Lone Star's) earlier confidential plan regarding First Republic's losses and the possible tax benefits of these losses.

Lone Star refused to pay all of the fees Price Waterhouse charged, and Price Waterhouse filed suit to collect them. Lone Star countered with charges of fraud against Price Waterhouse. Additionally, Lone Star sought leave of the court to file a third-party claim against Bear Stearns and NCNB, but the court denied leave. Lone Star and Price Waterhouse later agreed to settle the suit. The court approved the settlement and ordered all claims dismissed with prejudice. Lone Star later sued NCNB for fraud and civil conspiracy to commit constructive fraud. Among other things, Lone Star alleged that Price Waterhouse acted as NCNB's agent in fraudulently acquiring confidential information about Lone Star's bidding process and that NCNB used the information in its successful bid for First Republic's assets.

After some discovery, NCNB filed a motion for summary judgment and Lone Star responded. In addition, Lone Star amended its pleadings to add to its charge against NCNB an allegation that Price Waterhouse was operating as a dual agent of both Lone Star and NCNB. NCNB filed a supplemental motion for summary judgment. A number of supplements and responses followed from both sides. Ultimately, the trial court granted summary judgment in favor of NCNB.

A defendant moving for summary judgment must establish by competent summary judgment evidence that no genuine issue of fact exists as to one or more of the essential elements of the plaintiff's cause of action and that it is entitled to judgment as a matter of law. TEX.R.CIV.P. 166a(c); *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex. 1970). In deciding whether there is a material fact issue precluding summary judgment, evidence favorable to the nonmovant is taken as true, every reasonable inference is indulged in favor of the nonmovant, and any doubt is resolved in its favor. *Nixon v. Mr. Property Management*, 690 S.W.2d 546, 548–49 (Tex.1985).

We may consider only the evidence before the trial court at the time of the hearing on the motion for summary judgment. *Hush Puppy of Longview, Inc. v. Cargill Interests, Ltd.*, 843 S.W.2d 120, 122 (Tex.App.—Texarkana 1992, no writ). Only issues expressly presented to the trial court by written motion, answer, or other response may be considered on appeal. Tex.R.Civ.P. 166a(c); *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 677 (Tex. 1979). A summary judgment can be neither reversed nor affirmed on any ground not specifically presented in the motion for summary judgment. *McConnell v. Southside Independent School Dist.*, 858 S.W.2d 337, 341 (Tex.1993); *see Travis v. City of Mesquite*, 830 S.W.2d 94, 100 (Tex.1992). When, as in this case, the trial court's order does not specify the grounds relied on in granting summary judgment, the judgment will be affirmed if any of the theories advanced in the motion for summary judgment is meritorious. *Rogers v. Ricane Enterprises, Inc.*, 772 S.W.2d 76, 79 (Tex.1989).

In its original and supplemental motions for summary judgment, NCNB relied on these grounds: (1) Lone Star's claims are barred by res judicata; (2) Price Waterhouse was not NCNB's agent; (3) Lone Star's claim is barred by limitations; and (4) even if Price Waterhouse was NCNB's agent and misrepresentation took place, Lone Star seeks no legally cognizable damages, and, alternatively, there was no causal connection between NCNB's alleged actions and Lone Star's alleged damages.[1] Because we find that NCNB's summary judgment evidence conclusively negates that Price Waterhouse was its agent, we affirm the summary judgment so far as it denied recovery against NCNB for the acts of Price Waterhouse as agent for NCNB. We find that the other grounds for summary judgment were not established, so we reverse the judgment as to the other claims and remand them for trial.

NCNB first argues that Lone Star's claim is barred by res judicata because the current claim is identical to the claim Lone Star asserted in the earlier suit involving Price Waterhouse. As noted, that suit was settled and the parties' claims were dismissed with prejudice.

Res judicata is a general term for two related rules concerning the conclusive effects of final judgments. The rules are: (1) claim preclusion, also known as res judicata; and (2) issue preclusion, also known as collateral estoppel. *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628 (Tex.1992). Res judicata prevents the relitigation of a claim that has been finally adjudicated, as well as all related matters that reasonably could and should have been litigated in the prior suit. Issue preclusion, or collateral estoppel, prevents the relitigation of particular issues already resolved in a prior suit. *Id.*

Texas uses the transactional approach to res judicata. *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627. A final judgment extinguishes the right to bring other suits on the transaction or series of transactions involved in that litigation. Any cause of action arising out of the same transaction is barred. In determining whether the transaction is the same, we consider and weigh whether the facts are related in time, space, origin, or motivation; whether they form a convenient trial unit; and whether their treatment as a trial unit conforms to the parties' expectations or business usage. *Id.* at 631, *quoting* Restatement (Second) of Judgments § 24(2) (1982). Thus, a subsequent suit is barred if it arises out of the same subject matter involved in a previous suit and which, through the exercise of diligence, could have been litigated in that suit.

There is no dispute that Lone Star's earlier suit against Price Waterhouse arose out of the same transaction or series of transactions and included the same allegations of wrongdoing by Price Waterhouse as are involved here. The only difference is that in this suit Lone Star attempts to hold NCNB vicarious-

---

1. Lone Star initially argues that NCNB's supplemental motion for summary judgment must fail because it addresses only Lone Star's allegations regarding Price Waterhouse's alleged "bad tax advice" and fails to address that part of the fraud claim addressing Price Waterhouse's alleged misrepresentation of NCNB's interest in the First Republic bidding. This is clearly not true. NCNB's motion expressly addresses both parts of Lone Star's complaint.

ly liable for the acts of Price Waterhouse on principles of agency.

■ Lone Star argues, however, that in the earlier suit the trial court prevented it from litigating its claim ·against NCNB, and therefore res judicata should not bar this suit. Res judicata will not preclude the litigation of claims that the trial court *explicitly separated or severed* from the prior suit. *Van Dyke v. Boswell, O'Toole, Davis & Pickering,* 697 S.W.2d 381, 384 (Tex.1985). This corollary of res judicata also exempts further litigation if the trial court's judgment expressly declares the subject of that future litigation not to have been in issue in the prior suit or expressly omits such matters from consideration in that suit. *See White v. White,* 149 S.W.2d 1031, 1033–34 (Tex.Civ. App.—Waco 1941, writ ref'd). We do not have that situation here. The court in the prior suit did not sever the claim against NCNB or expressly state in its judgment that the action against NCNB would not be barred.

Lone Star argues, however, that the trial court's refusal in the earlier action to grant its motion to add NCNB and others as parties amounted to excluding the claim from its judgment or severing it from the case. To allow res judicata to bar the present suit, Lone Star contends, would deny its right to procedural due process guaranteed by the Fourteenth Amendment to the United States Constitution.

NCNB argues that, under Section 26 of the Restatement (Second) of Judgments, the mere refusal of the court in the first action to allow the plaintiff to introduce additional material concerning a claim does not amount to a reservation of the matter from the preclusive effect of the judgment. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 26 cmt. b (1982). We agree, but we also agree with Lone Star that Section 26 does not apply to joinder of parties, but rather to splitting a cause of action. That section and the other related sections (Sections 24–29) speak of claim splitting and issue preclusion, whereas Sections 34–61 speak of party preclusion by judgment. RESTATEMENT (SECOND) OF JUDGMENTS §§ 24–29; §§ 34–61 (1982).

Where the trial court prevents a defendant from bringing a cross-action to add parties to the suit, the defendant's claims against the absent parties are not litigated and remain open. *See Hogue v. Wilkinson,* 291 S.W.2d 750, 756 (Tex.Civ.App.—Texarkana 1956, no writ). NCNB and its fellow defendants were not parties to the previous lawsuit. Price Waterhouse sued Lone Star for its unpaid fees, and Lone Star attempted to file a third-party action bringing in NCNB, Bear Stearns, and later NCNB Corporation, Bear Stearns, and Weil, Gotschal & Manges. The trial court in the first suit prevented Lone Star from bringing in NCNB Corporation, so Lone Star's claims against it were not litigated in the dismissal order and the claims remain open. *Hogue v. Wilkinson, supra.*

Res judicata applies only if the court has passed, or could have passed, on issues between the same parties or their privies. *Garza v. Texas Real Estate Commission,* 808 S.W.2d 212, 215 (Tex.App.—Houston [1st Dist.] 1991, no writ). Parties in the second suit must have been parties in the first suit or in privity with parties in the first suit. *Scheffer v. Chron,* 560 S.W.2d 419, 422–23 (Tex.Civ.App.—Beaumont 1977, writ ref'd n.r.e.). In other words, res judicata binds only parties to the first suit and those who claim under them. Those who are not bound by the earlier judgment may not invoke it. *Swilley v. McCain,* 374 S.W.2d 871 (Tex. 1964); *see also Texas Water Rights Commission v. Crow Iron Works,* 582 S.W.2d 768, 771–72 (Tex.1979); *Lemon v. Spann,* 633 S.W.2d 568, 570 (Tex.App.—Texarkana 1982, writ ref'd n.r.e.).

■ NCNB may invoke res judicata only if it is in privity with Price Waterhouse. A final judgment on the merits in favor of an agent acting for his principal is conclusive in a subsequent suit brought against the principal for vicarious liability determined in the former litigation. *Maxey v. Citizens National Bank of Lubbock,* 489 S.W.2d 697 (Tex. Civ.App.—Amarillo 1972), *rev'd on other grounds,* 507 S.W.2d 722 (Tex.1974). If one is vicariously liable for another's conduct and an injured person sues one of them, a judgment against the injured person that bars him from reasserting his claim against the

first defendant extinguishes any claim he has against the vicariously liable person, unless the claim in the second action is based on grounds that could not have been asserted against the first defendant. RESTATEMENT (SECOND) OF JUDGMENTS § 51(1)(a) (1982). If a plaintiff's suit against an agent is dismissed with prejudice, a second suit may be brought against the principal if the claims assert liability against the principal that are not entirely derivative from the liability of the agent on which the first suit was based. *Hammonds v. Holmes*, 559 S.W.2d 345, 347 (Tex.1977).

Lone Star, whatever claims it may have asserted against Price Waterhouse in the first suit, is asserting independent claims against NCNB in the second suit. The trial court prevented Lone Star from asserting those claims in the first suit, so they survived. RESTATEMENT (SECOND) OF JUDGMENTS § 51(1)(a). Lone Star is not asserting solely vicarious claims, but is also claiming that NCNB committed independent torts against it. The suit alleges that NCNB acted as a joint tortfeasor in the perpetration of frauds against it based on NCNB's alleged participation in the breach of fiduciary duties by the other defendants. Some but not all of the claims against NCNB rely on the alleged principal/agent relationship between NCNB and Price Waterhouse. Thus, even if NCNB is in privity with Price Waterhouse, Lone Star is not precluded by the prior judgment from pursuing its independent claims against NCNB.

Privity between NCNB and Price Waterhouse depends on the alleged agency relationship. If there is summary judgment evidence raising a fact issue on agency, summary judgment for NCNB on the vicarious liability claim was improper.

NCNB argues that the uncontroverted summary judgment evidence establishes that Price Waterhouse was not its agent. Lone Star counters that NCNB's summary judgment evidence is not adequate proof and that certain evidence, if taken as true, at least raises a fact issue regarding whether Price Waterhouse was its agent.

Concerning its attack on NCNB's summary judgment evidence, Lone Star argued in its response that the evidence contained in a number of NCNB's affidavits amounts to nothing more than legal conclusions submitted by interested laypersons. The affidavits referred to are those of Hugh McColl, Jr., then chairman of the board of NCNB; Timothy Hartman, vice-chairman of NCNB; Calvin Hunkele, senior vice-president and comptroller of NCNB; Frank Gentry, senior vice-president and director of corporate strategy of NCNB; and John Mack, senior vice-president and treasurer of NCNB, all of whom state in their affidavits that they participated in the preparation of NCNB's bid for First Republic's assets.

All of the affiants state that they had no knowledge that any Price Waterhouse personnel had assisted Lone Star in its bid, that they never agreed or consented that Price Waterhouse act as their or NCNB's agent or appointed it as their or NCNB's agent, and that, to their knowledge, neither Price Waterhouse nor any of its personnel, nor Hugh McColl, III acted on behalf of or as the agent of NCNB.

The affidavits merely contain sworn statements concerning the affiants' knowledge of any business relationship between NCNB and Price Waterhouse regarding the First Republic bid. The affidavits are based on personal knowledge, set forth facts, and thus meet the requirements of TEX.R.CIV.P. 166a(f). As far as the affidavits being those of interested witnesses, that does not affect their competence. Summary judgment may be based on the testimony of interested witnesses. The affidavits about which Lone Star complains are competent summary judgment evidence.

■ Lone Star argues that there is sufficient competent summary judgment evidence to at least raise a fact issue concerning an agency relationship between NCNB and Price Waterhouse. Agency is the consensual relationship between two parties whereby one, the agent, acts on behalf of the other, the principal, subject to the principal's control. *Noble Exploration, Inc. v. Nixon Drilling Co.*, 794 S.W.2d 589, 592 (Tex.App.— Austin 1990, no writ). For an agency relationship to exist there must be a meeting of

the minds between the parties to establish the relationship, and there must be some act constituting the appointment of one as the agent. *Carr v. Hunt*, 651 S.W.2d 875, 879 (Tex.App.—Dallas 1983, writ ref'd n.r.e.). The consent may be express or implied; the intention of the parties may be ascertained by their conduct.

The Texas courts are in conflict on whether the existence of an agency relationship is a question of law or a question of fact. *Cherokee Water Co. v. Forderhause*, 727 S.W.2d 605, 611 n. 4 (Tex.App.—Texarkana), *rev'd on other grounds*, 741 S.W.2d 377 (Tex. 1987). Those courts holding that the existence of the relationship is a question of law, however, hold that such is the case only where the facts are undisputed. *General Motors Corp. v. Washington*, 559 S.W.2d 425, 428 (Tex.Civ.App.—Texarkana 1977, no writ). If the facts are disputed, the facts are for the jury, and the court decides whether the facts are legally sufficient to constitute an agency. The relationship may be established by either direct or circumstantial evidence. *Spangler v. Jones*, 861 S.W.2d 392, 397 (Tex. App.—Dallas 1993, writ denied).

Lone Star points to considerable summary judgment evidence it contends raises a fact issue as to actual or apparent authority on the part of Price Waterhouse to act for NCNB. All this evidence establishes, however, is that NCNB had in 1988 consulted with and received advice from some of Price Waterhouse's accountants about the possible bid on the First Republic assets, that the matter was considered confidential, and that NCNB wrote the FDIC stating that it had consulted with Price Waterhouse about possible tax benefits. Lone Star claims that the evidence also shows that certain Price Waterhouse accountants in Dallas consulted by Lone star stated that NCNB had no interest in First Republic, that Lone Star was aware of the relationship between Price Waterhouse and NCNB, that Lone Star would not have hired Price Waterhouse had Lone Star known NCNB was bidding on the First Republic assets, that Hugh McColl, III told Lone Star that NCNB was not interested in bidding on First Republic, and that Price Waterhouse accountants in Charlotte

created a list of their personnel to possibly assist NCNB if it was the successful bidder.

There is no summary judgment evidence of either a consensual relationship between NCNB and Price Waterhouse or of NCNB's control of Price Waterhouse's actions. The evidence only shows that NCNB employed several of Price Waterhouse's Charlotte, North Carolina accountants for consultation and advice. Merely engaging an accountant does not, absent evidence of control, make the accountant an agent of the employer. *See Parker v. Carnahan*, 772 S.W.2d 151, 157 (Tex.App.—Texarkana 1989, writ denied). Also, there is no evidence that NCNB or the Price Waterhouse accountants knew of any contact between the Dallas personnel of Price Waterhouse and personnel of Lone Star, or even that Lone Star existed. Without any evidence of consent, meeting of the minds, or control, there is no evidence that would support a finding of agency. *See Thompson v. Schmitt*, 115 Tex. 53, 274 S.W. 554, 557 (1925).

Lone Star's related argument that NCNB had clothed Price Waterhouse with apparent authority to act as its agent also fails. A prerequisite to a finding of apparent authority is evidence of some conduct on the part of the principal that is relied on by the person asserting the agency that would lead a reasonable person to believe that the agent had authority to act on behalf of the principal. *Ames v. Great Southern Bank*, 672 S.W.2d 447, 450 (Tex.1984). Lone Star produced no summary judgment evidence of such conduct on the part of NCNB. As there is no summary judgment evidence to show privity between NCNB and Price Waterhouse, the summary judgment for NCNB on the basis of res judicata was improper. Summary judgment was proper, however, as to NCNB's vicarious liability for the acts of Price Waterhouse because there is no summary judgment evidence showing agency.

NCNB also contends that summary judgment was proper because Lone Star's claim is barred by the statute of limitations. Lone Star argues that the statute of limitations does not apply because the four-year statute of limitations governing fraud applies to its

cause of action and its claim is covered by the relation-back doctrine set out in TEX.CIV. PRAC. & REM.CODE ANN. § 16.068 (Vernon 1986).

Both parties agree that Lone Star's cause of action accrued on July 29, 1988, the date of NCNB's successful bid and the date Lone Star learned of the alleged fraud. Lone Star filed its original petition in this action on June 25, 1992. NCNB argues that Lone Star in that petition alleged only a cause of action for civil conspiracy and because civil conspiracy is governed by the two-year statute of limitations, the cause of action was barred when the petition was filed. Lone Star amended its petition to bring its present claims of actual and constructive fraud on March 11, 1993.

TEX.CIV.PRAC. & REM.CODE ANN. § 16.068 reads as follows:

> If a filed pleading relates to a cause of action, cross action, counterclaim, or defense that is not subject to a plea of limitation when the pleading is filed, a subsequent amendment or supplement to the pleading that changes the facts or grounds of liability or defense is not subject to a plea of limitation unless the amendment or supplement is wholly based on a new, distinct, or different transaction or occurrence.

■ When an amended pleading sets up a new cause of action under Section 16.068, it will relate back to the date of the original pleading for the purposes of limitations, so long as the amended pleading does not allege a wholly new, distinct, or different transaction. *Ex parte Goad,* 690 S.W.2d 894, 896–97 (Tex.1985); *Dorney v. Henderson Clay Products, Inc.,* 838 S.W.2d 314, 316 (Tex.App.—Texarkana 1992, writ denied). Here, the amended claim does not allege a wholly new, distinct, or different transaction. Both the earlier and later claims involve the same wrongdoer—NCNB, the same basic wrong—misappropriation of confidential information, and the same event—the bidding on First Republic's assets.

The next issue is whether Lone Star's original claim was filed before the expiration of the limitations period.

Although Lone Star's original petition asserted a cause of action for civil conspiracy to commit fraud, it also alleged a cause of action against NCNB for knowingly participating with the other defendants in a breach of their fiduciary duty, and it sought to impose a constructive trust on the assets NCNB acquired through their fraud. A third party who knowingly participates in a breach of duty by a fiduciary becomes a joint tortfeasor with the fiduciary in his fraud, and is liable as such, apart from any proof of a civil conspiracy. *City of Fort Worth v. Pippen,* 439 S.W.2d 660 (Tex.1969); *Kinzbach Tool Co. v. Corbett–Wallace Corp.,* 138 Tex. 565, 160 S.W.2d 509 (1942). Because Lone Star's original petition was not barred when it was filed and its amended petition comes within the relation-back rule, its independent claims against NCNB for NCNB's own torts are not barred by limitations. And because the summary judgment evidence raises fact issues as to Lone Star's claims against NCNB for primary liability, summary judgment as to those claims was improper.

■ Another ground NCNB advanced to support summary judgment was that Lone Star alleged no legally cognizable damages that it suffered because of the alleged conduct. We disagree with this contention. Lone Star alleged that the fraud and breach of fiduciary duties caused it to lose the opportunity to successfully bid for the failed bank's assets, and that a constructive trust should be imposed on those assets in NCNB's hands. Those are legally cognizable damages and remedies causally related to the alleged wrongs.

For the reasons stated, we affirm the summary judgment as to Lone Star's claims against NCNB for acts of Price Waterhouse as agent for NCNB. As to the cause of action against NCNB for its independent acts, we reverse the take-nothing summary judgment and remand that cause of action to the trial court for trial.