

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-12-00474-CV

**TOKA GENERAL CONTRACTORS** and Moore Sorrento, LLC,
Appellants

v.

**WM. RIGG CO.**,
Appellee

From the 17th Judicial District Court, Tarrant County, Texas
Trial Court No. 17-230268-08
Honorable Melody M. Wilkinson, Judge Presiding

Opinion by:     Karen Angelini, Justice

Sitting:        Karen Angelini, Justice
                Marialyn Barnard, Justice
                Rebeca C. Martinez, Justice

Delivered and Filed:   April 9, 2014

AFFIRMED

TOKA General Contractors and Moore Sorrento, LLC sued insurance agent Wm. Rigg Company for negligence, gross negligence, breach of contract, and breach of fiduciary duty. A jury found against Rigg and in favor of TOKA and Moore Sorrento as to negligence only. In spite of the jury's negligence finding, the trial court granted Rigg's motion for judgment notwithstanding the verdict (JNOV) and rendered a take-nothing judgment. TOKA and Moore Sorrento appeal from the take-nothing judgment, asserting the trial court erred in granting JNOV. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### The Parties

Burk Collins—who owns, develops, and operates shopping centers through an entity called Burk Collins & Company, Inc. ("BCCI")—has an ownership interest in both TOKA and Moore Sorrento. TOKA is a general contracting company. Moore Sorrento owns and operates a shopping center known as the Shoppes at Moore, which is located in Moore, Oklahoma.

In 2005, Collins determined that BCCI was in need of risk management services. Collins contacted Harry Johnson, who was a Rigg employee. Johnson recommended that BCCI reduce its overall insurance premiums by consolidating coverage. Johnson advised Collins that this could be done while maintaining appropriate coverage for all of BCCI's entities. On October 5, 2005, Collins signed a letter in which he appointed Rigg as BCCI's "Exclusive Broker/Agent of Record."

### The Insurance Policies

One of Johnson's first duties was to find property damage and liability coverage for all of BCCI's entities, including TOKA and Moore Sorrento. Johnson secured such coverage for Moore Sorrento through a policy from National Surety Corporation. Additionally, Johnson secured worker's compensation, builder's risk, and liability coverage for TOKA from Amerisure Mutual Insurance Company. Moore Sorrento was added to the Amerisure policy as an additional insured.

### A Tenant Dispute

When Collins first bought the property where the Shoppes at Moore is located, a shopping center already existed on the property. Collins planned to re-develop the existing shopping center into a "power center" with national tenants like Ross, Best Buy, Wal-Mart, and Target. Under Collins's plan, all existing buildings would be demolished and replaced with new structures. Collins renegotiated leases with every existing tenant but one, City College. In June 2006, Moore

Sorrento contracted with TOKA to demolish the vacant buildings in the shopping center in order to make way for new construction.

After the demolition began, City College complained about noise, dirt, dust, and loss of parking from TOKA's demolition work. In October 2006, Collins received a letter from an attorney complaining that City College's enjoyment of the premises had been severely diminished by TOKA's demolition work. When Collins received the letter, he instructed two TOKA employees to notify Johnson of the City College complaint. When the employees talked to Johnson, Johnson told them that notifying the insurance carriers of the complaint was problematic. First, the Amerisure policy was about to be renewed, and renewal would be more difficult if a claim was made. Second, the common ownership of TOKA and Moore Sorrento complicated the claim process. Third, City College's complaint might not be covered by the policies. Thus, Johnson did not notify the insurance carriers of City College's complaint.

*An Arbitration Award*

In November 2006, City College filed an application for arbitration in an Oklahoma state court. The dispute between City College and Moore Sorrento went to arbitration. In October 2007, the arbitrators concluded that Moore Sorrento had constructively evicted City College and awarded City College $845,871.08 in actual damages plus expenses and fees. TOKA employees forwarded a copy of the arbitration award to Johnson, who then prepared and delivered formal claim notices to the insurance companies. Johnson sent two claim notices to National Surety (one for Moore Sorrento and one for TOKA) and one to Amerisure (for TOKA). Initially, both insurance companies denied coverage.

*The Present Lawsuit*

The present lawsuit began when TOKA and Moore Sorrento sued Amerisure seeking coverage for losses under the Amerisure policy. Rigg and National Surety were subsequently

added as defendants. After the trial court determined the coverage issues in TOKA's and Moore Sorrento's favor, the claims involving Amerisure and National Surety were settled and the insurance carriers were dismissed from the lawsuit. Amerisure settled with both TOKA and Moore Sorrento by paying $850,000.00 directly to City College. National Surety settled with Moore Sorrento by paying $400,000.00 to Moore Sorrento. In exchange, Moore Sorrento released National Surety from all claims arising from the dispute. After Amerisure and National Surety were dismissed, TOKA and Moore Sorrento alleged that they had incurred costs and damages, including attorney's fees, in excess of the settlement amounts. TOKA and Moore Sorrento alleged that they were maintaining their suit against Rigg to recover their remaining damages and to make them "whole."

TOKA and Moore Sorrento tried their case to a jury on theories of negligence, gross negligence, breach of contract, and breach of fiduciary duty. At trial, TOKA and Moore Sorrento asserted that Rigg failed to obtain appropriate insurance policies for them and that it failed to timely submit their claims to Amerisure and National Surety. TOKA and Moore Sorrento requested jury instructions and questions on all of their claims. The trial court, however, refused to submit the breach of fiduciary duty claims to the jury.

The jury found in favor of TOKA and Moore Sorrento as to negligence only. The jury determined Rigg was 70% negligent, TOKA was 15% negligent, and Moore Sorrento was 15% negligent. The jury awarded TOKA $133,214.50 for its reasonable attorney's fees and expenses incurred in prosecuting its claims against Amerisure. The jury also awarded Moore Sorrento $287,808.50 for its reasonable attorney's fees and expenses incurred in prosecuting its claims against Amerisure and National Surety. Additionally, the jury awarded Moore Sorrento $364,745.00 for its reasonable attorney's fees and expenses incurred in defending itself in the arbitration proceeding.

In its JNOV motion, Rigg presented five grounds for granting JNOV. Among these grounds were (1) Rigg was entitled to a settlement credit greater than the amount of the damages awarded by the jury, and (2) TOKA and Moore Sorrento could not recover attorney's fees from Rigg based solely on a negligence finding. The trial court granted JNOV without specifying the basis for its ruling and rendered a take-nothing judgment. TOKA and Moore Sorrento appealed. The Texas Supreme Court transferred the appeal from the Fort Worth Court of Appeals to this court.

## JUDGMENT NOTWITHSTANDING THE VERDICT

On appeal, TOKA and Moore Sorrento argue the trial court erred in granting JNOV. A trial court must grant JNOV when the evidence is conclusive and one party is entitled to recover as a matter of law, or when a legal principle prevents a party from prevailing on its claim. *Morrell v. Finke*, 184 S.W.3d 257, 290 (Tex. App.—Fort Worth 2005, pet. denied). When a motion for JNOV presents multiple grounds and the trial court grants JNOV without specifying the basis for its ruling, the appellant has the burden of showing that the judgment cannot be sustained on any of the grounds stated in the motion. *Fort Bend County Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 394 (Tex. 1991); *Guzman v. Synthes (USA)*, 20 S.W.3d 717, 719-20 (Tex. App.—San Antonio 1999, pet. denied). In their briefing, TOKA and Moore Sorrento attack all of the grounds presented in Rigg's JNOV motion. However, we find it necessary to address only two of these grounds.

### *Statutory Reductions and Settlement Credits*

In its motion for JNOV, Rigg asked the trial court to apply statutory reductions and settlement credits to the damages awarded by the jury. Based on these statutory reductions and settlement credits, Rigg argued the trial court should render a take-nothing judgment.

Chapter 33 of the Texas Civil Practice and Remedies Code sets out the rules pertaining to proportionate responsibility and the calculation of settlement credits. TEX. CIV. PRAC. & REM. CODE ANN. § 33.002(a)(1) (West 2008). Chapter 33 applies to any tort-based cause of action in

which a defendant, settling person, or responsible third party, is found to be responsible for a percentage of the harm for which relief is sought. *Id*. Section 33.012(a) provides that the amount of recovery for a claimant is determined by reducing the amount of the damage award by a percentage equal to the claimant's percentage of responsibility. TEX. CIV. PRAC. & REM. CODE ANN. § 33.012(a) (West 2008). Section 33.012(b) provides that if the claimant has settled with one or more persons, the trial court is required to further reduce the amount of damages to be recovered by the sum of the dollar amounts of all settlements. TEX. CIV. PRAC. & REM. CODE ANN. § 33.012(b) (West 2008).

A nonsettling party has the burden to prove its right to a settlement credit. *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 927 (Tex. 1998). The nonsettling party can meet this burden by placing the settlement agreement or some evidence of the settlement amount in the record. *Id*. If the nonsettling party meets this burden, the burden shifts to the plaintiff to show that certain amounts should not be credited. *Business Staffing, Inc. v. Viesca*, 394 S.W.3d 733, 752 (Tex. App.—San Antonio 2012, no pet.). If the plaintiff cannot satisfy this burden, then the nonsettling party is entitled to credit equaling the entire settlement amount. *Ellender*, 968 S.W.2d at 928. Generally, the trial court—not the jury—applies any settlement credits. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 33.012(b). A trial court's determination of the existence or the amount of a settlement credit is reviewed for an abuse of discretion. *Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 330 S.W.3d 342, 360 (Tex. App.—San Antonio 2012), *rev'd on other grounds*, 372 S.W.3d 177 (Tex. 2012); *Oyster Creek Fin. Corp. v. Richwood Invs. II, Inc.*, 176 S.W.3d 307, 326 (Tex. App.—Houston [1st Dist.] 2004, pet. denied).

Here, Moore Sorrento does not dispute that Rigg was entitled to a settlement credit of $400,000.00.[1] Instead, Moore Sorrento argues it was error for the trial court to apply this settlement credit because the record establishes that the $400,000.00 credit was already applied by the jury. Moore Sorrento argues (1) the parties expressly agreed to have the jury apply the settlement credit and (2) Rigg waived its right to have the trial court apply the settlement credit.

Nothing in the record shows the parties expressly agreed that the jury would apply the $400,000.00 settlement credit. Nor does the record show that Rigg waived the right to have the trial court apply the settlement credit. The settlement agreement was admitted into evidence, and the jury heard testimony regarding the settlement amount. Most of this testimony was elicited by Moore Sorrento, not by Rigg. Moreover, nothing in the relevant statutes provides that a defendant waives the right to have the trial court apply a settlement credit by allowing evidence of the settlement amount to be presented at trial.

Moore Sorrento cites one case, *Martin K. Eby Constr. Co. v. LAN/STV*, to support its argument that the trial court should not have applied the $400,000.00 settlement credit because the jury had already applied it. 350 S.W.3d 675, 689-90 (Tex. App.—Dallas 2011, pet. granted). In *LAN/STV*, the trial court refused to apply a settlement credit to reduce the jury's damage award when the defendant elicited evidence about the settlement, presented a damage model that expressly included the settlement as part of its damages calculation, and argued before the jury that the settlement should be considered in deciding damages. *Id*. The Dallas Court of Appeals affirmed the trial court's ruling, concluding that the defendant had invited any error. *Id*. at 690. However, the case before us is distinguishable from *LAN/STV*. Even though Rigg referenced the

---

[1]Moore Sorrento does dispute that Rigg was entitled to a settlement credit of $850,000.00, pointing out that this amount was paid directly to City College. We do not address this argument because it is unnecessary to the disposition of this appeal. *See* TEX. R. APP. P. 47.1.

settlement in its closing argument, Rigg did not go as far as the defendant in *LAN/STV*. Rigg did not include the settlement as part of a damages calculation. Additionally, the relevant question instructed the jury: "Do not speculate about what any party's ultimate recovery may or may not be. Any recovery will be determined by the court when it applies the law to your answers at the time of judgment." Contrary to Moore Sorrento's arguments, the record fails to establish that the jury applied the $400,000.000 settlement credit in determining the amount of attorney's fees and expenses Moore Sorrento incurred in the City College arbitration. Thus, the trial court did not abuse its discretion in applying the $400,000.00 settlement credit as requested in the motion for JNOV.

Here, the jury found that the attorney's fees and expenses Moore Sorrento incurred in the City College arbitration were $364,745.00.[2] Under section 33.012(a), the trial court was required to reduce this amount by a percentage equal to the claimant's percentage of responsibility. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 33.012(a). The jury found Moore Sorrento was 15% responsible for the occurrence in question. When the trial court reduced $364,745.00 by 15%, the remaining amount was $310,033.25. Next, under section 33.012(b), the trial court was required to credit the sum of the dollar amount of the settlement to $310,033.25. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 33.012(b). Applying the $400,000.00 settlement credit to the remaining amount ($310,033.25) extinguished Moore Sorrento's recovery. We therefore conclude the trial court did not err in granting the motion for JNOV as to the attorney's fees and expenses awarded to Moore Sorrento for defending itself in the City College arbitration.

---

[2]Specifically, the jury was asked, "What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Moore Sorrento for its damages, if any, resulting from the occurrence in question?" The jury was instructed to consider the reasonable attorney's fees and expenses incurred by Moore Sorrento in defending the arbitration against City College which were the natural, probable, and foreseeable consequence of Rigg's conduct.

***Attorney's Fees as Damages***

TOKA and Moore Sorrento also asked the jury to award them the attorney's fees and expenses they incurred in prosecuting their claims against Amerisure and National Surety. The jury found in favor of TOKA and Moore Sorrento on this issue and awarded them attorney's fees and expenses as damages.

In its motion for JNOV, Rigg argued that the attorney's fees and expenses awarded by the jury were not recoverable because, as a general rule, attorney's fees are not recoverable unless authorized by statute or contract. *See Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310-11 (Tex. 2006) ("For more than a century, Texas law has not allowed recovery of attorney's fees unless authorized by statute or contract."). In response, TOKA and Moore Sorrento argued that the attorney's fees and expenses awarded in prosecuting their claims against Amerisure and National Surety were recoverable based on the "tort of another" exception articulated in *Turner v. Turner*, 385 S.W.2d 230 (Tex. 1965); *Akin, Gump, Strauss, Hauer & Feld, L.L.P.* v. *Nat'l Dev. and Research Corp.*, 299 S.W.3d 106 (Tex. 2009); and in other cases decided by Texas intermediate appellate courts.

We begin our analysis by examining the Texas Supreme Court cases relied on by TOKA and Moore Sorrento. In *Turner*, the plaintiff prevailed against the defendant on a claim for alienation of affections. 385 S.W.2d at 232. The defendant and her spouse, who was also joined as a defendant, divorced while the suit was pending. *Id*. The trial court rendered judgment against the defendant for the plaintiff's damages and ordered the defendant to pay her former spouse's attorney's fees in defending the suit. *Id*. The defendant appealed. *Id*. In defending the attorney's fees award, the former spouse cited section 914 of the Restatement of Torts which provided: "A person who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover compensation for the

reasonably necessary loss of time, attorney's fees and other expenditures thereby suffered or incurred." *Id*. at 234. The appellate court affirmed, but the Texas Supreme Court concluded the defendant could not be charged with these attorney's fees and reversed. *Id*. at 232.

The Supreme Court first acknowledged the general rule that "unless provided for by statute or by contract between the parties, attorney's fees incurred by a party to litigation are not recoverable against his adversary." *Id*. at 233. The Supreme Court then went on to discuss, without adopting, an exception to the general rule. *Id*. at 234. "One exception is that where a plaintiff has been involved in litigation with a third party as a result of the tortious act of another, [the] plaintiff may recover in a separate suit for his reasonable and necessary expenses of the prior litigation." *Id*. The Supreme Court explained that for this exception to apply (1) the present plaintiff must have incurred the attorney's fees in the defense or prosecution of a prior action, and (2) the litigation must have involved a third party and not the defendant in the present action. *Id*. Concluding that the exception was inapplicable to the case before it, the Supreme Court reversed the attorney's fees award. *Id*.

Again, in *Akin*, the Texas Supreme Court did not adopt the "tort of another" exception relied on by TOKA and Moore Sorrento. 299 S.W.3d at 119. In that case, the plaintiff sued its former law firm claiming the law firm had committed malpractice in representing the plaintiff in a declaratory judgment action. *Id*. at 111. The jury found the law firm had committed malpractice and awarded the plaintiff damages for the attorney's fees the plaintiff had paid to the law firm to represent it in the declaratory judgment action. *Id*. The Texas Supreme Court explained that the damages awarded were not attorney's fees for prosecuting its malpractice suit against the law firm; rather, the damages awarded were damages measured by the economic harm the plaintiff had suffered from the law firm's breach of its duty of care. *Id*. at 121. The Supreme Court concluded that "the general rule as to recovery of attorney's fees from an adverse party in litigation does not

bar a malpractice plaintiff from claiming damages in a malpractice case for fees it paid its attorneys in the underlying suit." *Id*. at 119. And, because the general rule did not apply to the plaintiff's claim, the Supreme Court "[did] not address whether the exception set out in section 914(2) of the Second Restatement should be adopted as Texas law."[3] *Id*.

Although the Texas Supreme Court has not expressly adopted the "tort of another" exception, some intermediate Texas appellate courts have applied it. *See,* e.g.*, Lesikar v. Rappeport*, 33 S.W.3d 282, 306 (Tex. App.—Texarkana 2000, pet. denied); *Estate of Arlitt v. Paterson*, 995 S.W.2d 713, 721 (Tex. App.—San Antonio 1999, pet. denied), *overruled on other grounds*, *Belt v. Oppenheimer, Blend, Harrison & Tate, Inc.*, 192 S.W.3d 780 (Tex. 2006); *Standard Fire Ins. Co. v. Stephenson*, 963 S.W.2d 81, 90-91 (Tex. App.—Beaumont 1997, no pet.); *Baja Energy, Inc. v. Ball*, 669 S.W.2d 836, 839 (Tex. App.—Eastland 1984, no writ). However, other Texas intermediate courts have declined to do so. *See*, e.g., *Naschke v. Gulf Coast Conference*, 187 S.W.3d 653, 655 (Tex. App.—Houston [14th Dist.] 2006, pet. denied); *Petersen v. Dean Witter Reynolds, Inc.*, 805 S.W.2d 541, 549 (Tex. App.—Dallas 1991, no writ). The Fort Worth Court of Appeals is among the Texas appellate courts that have declined to apply the "tort of another" exception. *Dalton Steamship Corp. v. W.R. Zanes & Co.*, 354 S.W.2d 621 (Tex. Civ. App.—Fort Worth 1962, no writ). In *Dalton*, the plaintiff had contracted with the defendant to not release goods to a third party until the plaintiff received payment for the goods from a third party.

---

[3]Section 914 of the Restatement (Second) of Torts provides:

    (1)  The damages in a tort action do not ordinarily include compensation for attorney fees or other expenses of the litigation.

    (2)  One who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for loss of time, attorney fees and other expenditures thereby suffered or incurred in the earlier action.

Restatement (Second) of Torts § 914 (1979).

*Id*. at 623. The defendant nevertheless released the goods without receiving payment from the third party. *Id*. As a consequence, the plaintiff lost possession of the goods and was unable to collect the amount owed from the third party. *Id*. The trial court rendered judgment for the plaintiff for the cost of the goods and for attorney's fees. *Id*. at 624. The Fort Worth Court of Appeals reversed the award of attorney's fees, pointing out that the "defendant's liability to plaintiff is for damages for breach of contract of a type where no existing statute makes provision for any additional award of attorney's fees." *Id*.

Neither of the Texas Supreme Court cases cited by TOKA and Moore Sorrento show that the trial court erred in granting the motion for JNOV. First, to qualify for the "tort of another" exception as articulated in *Turner*, TOKA and Moore Sorrento would have had to have sought to recover attorney's fees paid in a prior action. However, all of the attorney's fees awarded to TOKA ($133,214.50) and a portion of the attorney's fees awarded to Moore Sorrento ($287,808.50) were for attorney's fees incurred in the present action rather than in a prior action.

Next, *Akin* did not reach the issue of whether the "tort of another" exception should be adopted as Texas law. Moreover, in order for the present case to be analogous to *Akin*, TOKA and Moore Sorrento would have had to have sought recovery of the fees they paid to Rigg as their broker/agent. Instead, TOKA and Moore Sorrento, unlike the plaintiff in *Akin*, sought the recovery of attorney's fees paid to prosecute claims against the insurance carriers.

Finally, we are obligated to apply the precedent of the Fort Worth Court of Appeals, which has declined to apply the "tort of another" exception to the general rule that attorney's fees are not recoverable as damages. *See* TEX. R. APP. P. 41.3 (stating that in cases transferred by the Supreme Court, the transferee court must decide the case in accordance with the precedent of the transferor court); *Dalton*, 354 S.W.2d at 624 (holding that recovery of attorney's fees is allowed only when provided for by statute or contract). We conclude the trial court did not err in granting the motion

for JNOV as to the attorney's fees and expenses awarded to TOKA and Moore Sorrento for prosecuting their claims against Amerisure and National Surety.[4]

## BREACH OF FIDUCIARY DUTY

Next, TOKA and Moore Sorrento argue the trial court erred in failing to submit a question to the jury on its breach of fiduciary duty claims. The elements of a breach of fiduciary duty claim are: (1) a fiduciary relationship between the plaintiff and defendant, (2) a breach by the defendant of his fiduciary duty to the plaintiff, and (3) an injury to the plaintiff or benefit to the defendant as a result of the defendant's breach. *Lindley v. McKnight*, 349 S.W.3d 113, 124 (Tex. App.—Fort Worth 2011, no pet.). A trial court must submit a requested question to the jury if the pleadings and any evidence support it. *See* TEX. R. CIV. P. 278. Nevertheless, a trial court acts within its discretion in refusing to submit a proposed jury question if there is no evidence to support its submission. *Greater Houston Radiation Oncology, P.A. v. Sadler Clinic Ass'n, P.A.*, 384 S.W.3d 875, 898 (Tex. App.—Beaumont 2012, pet. denied) (citing *Alaniz v. Jones & Neuse, Inc.*, 907 S.W.2d 450, 452 (Tex. 1995)); *Gibbons v. Berlin*, 162 S.W.3d 335, 341 (Tex. App.—Fort Worth 2005, no pet.).

"[N]ot every relationship involving a high degree of trust and confidence rises to the stature of a fiduciary relationship." *Meyer v. Cathey*, 167 S.W.3d 327, 330 (Tex. 2005). Fiduciary duties may arise out of formal and informal relationships. *See id.* at 330-31; *Cotten v. Weatherford Bancshares, Inc.*, 187 S.W.3d 687, 698 (Tex. App.—Fort Worth 2006, pet. denied). In certain

---

[4]We have already concluded the trial court did not err in granting JNOV as to Moore Sorrento's recovery for defending the City College arbitration because of statutory reductions and settlement credits. However, most of our analysis concerning attorney's fees as damages applies with equal force to Moore Sorrento's recovery for defending the City College arbitration. One difference is that the amount awarded to Moore Sorrento for defending the City College arbitration was incurred in a prior action, and therefore, the prior action requirement articulated in *Turner* was satisfied. *Turner v. Turner*, 385 S.W.2d 230, 234 (Tex. 1965) (explaining that for the "tort of another" exception to apply the present plaintiff must have incurred attorney's fees in the defense or prosecution of a prior action).

formal relationships, such as the attorney-client relationship, a fiduciary duty arises as a matter of law. *Meyer*, 167 S.W.3d at 330. Courts also recognize an informal fiduciary duty that arises from a moral, social, domestic, or purely personal relationship of trust and confidence. *Id.* at 331; *Cotten*, 187 S.W.3d at 698. However, courts are cautious in recognizing fiduciary relationships. *See Meyer*, 167 S.W.3d at 331. To impose an informal fiduciary duty in a business transaction, the special relationship of trust or confidence must exist prior to, and apart from, the agreement made the basis of the suit. *Id.*; *Cotten*, 187 S.W.3d at 698.

On appeal, TOKA and Moore Sorrento do not contend that the relationship between an insurance broker and an insured is a formal fiduciary relationship as a matter of law. *See Envtl. Procedures, Inc. v. Guidry*, 282 S.W.3d 602, 626-28 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (concluding, after reviewing the evidence, that reasonable and fair-minded people could not conclude that a formal fiduciary relationship existed between an insurance broker and an insured). Nor do they contend that the relationship TOKA and Moore Sorrento had with Rigg was an informal fiduciary relationship. Instead, TOKA and Moore contend that the relationship they had with Rigg was an agency relationship, which is one type of formal fiduciary relationship. *See Johnson v. Brewer & Pritchard, PC*, 73 S.W.3d 193, 200 (Tex. 2002) ("[A]gency is [] a special relationship that gives rise to a fiduciary duty."); *see also Shands v. Texas State Bank*, 121 S.W.3d 75, 77 (Tex. App.—San Antonio 2003, pet. denied).

Agency is the consensual relationship between two parties, in which one party, the agent, acts on behalf of the other party, the principal, subject to the principal's control. *Shands v. Texas State Bank*, No. 04-00-00133-CV, 2001 WL 21490, at *3 (Tex. App.—San Antonio 2001, no pet.) (mem. op., not designated for publication); *Noble Exploration, Inc. v. Nixon Drilling Co., Inc.*, 794 S.W.2d 589, 592 (Tex. App.—Austin 1990, no writ). For an agency relationship to exist, there must be (1) a meeting of the minds between the parties to establish the relationship, and (2) some

act constituting the appointment of the agent. *Shands*, 2001 WL 21490, at *3; *Lone Star Partners v. NationsBank Corp.*, 893 S.W.2d 593, 599-600 (Tex. App.—Texarkana 1994, writ denied).

To support their argument that they had an agency relationship with Rigg, TOKA and Moore Sorrento cite to (1) a letter prepared by Collins stating that he was appointing Rigg as BCCI's "Exclusive Broker/Agent of Record effective immediately," and (2) testimony from an expert witness. To establish a formal agency relationship, TOKA and Moore Sorrento had to present evidence showing a meeting of the minds between the parties. *See Shands*, 2001 WL 21490, at *3; *Lone Star*, 893 S.W.2d at 599-600. The evidence cited by TOKA and Moore Sorrento fails to do so. First, the one-page letter prepared by Collins simply appoints Rigg as BCCI's exclusive broker/agent for "all property and casualty insurance placements," and supersedes and replaces all previous assignments to other agents or brokers. Second, in her testimony, the expert witness merely states her belief that Riggs's employee, Johnson, was not only an agent to the insurance company, but also was an agent to TOKA and Moore Sorrento. The cited evidence is not evidence of a formal agency relationship. *See Norton v. Martin*, 703 S.W.2d 267, 272 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.) (explaining that an agency relationship cannot be established by mere assertion without divulging the duties of the agent and the character of his representation).

Because the evidence presented at trial did not support the submission of TOKA's and Moore Sorrento's breach of fiduciary duty claims to the jury, the trial court did not err in refusing to submit these claims to the jury.

### CONCLUSION

The trial court's judgment is affirmed.

Karen Angelini, Justice