**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.,**

v.

**Justo L. DOMINGUEZ, Jr.**

**No. D–0040.**

Supreme Court of Texas.

Jan. 5, 1994.

Rehearing Overruled May 11, 1994.

J. Stephen Gibson, R. Brent Cooper, Charles T. Frazier, Jr., R. Michael Northrup, Dallas, for petitioner-appellant-relator.

Ruff Adams, Odessa, Larry Zinn, San Antonio, for respondent-appellee-respondent.

GONZALEZ, Justice, delivered the opinion of the Court, in which PHILLIPS, Chief Justice, and HIGHTOWER, HECHT, CORNYN, ENOCH and SPECTOR, Justices, join.

This workers' compensation case concerns an allegation by the worker that the compensation carrier breached its duty of good faith and fair dealing. Justo L. Dominguez, Jr. filed a compensation claim with the Industrial Accident Board for "repetitious, traumatic injury to his back and body as a whole." The Board awarded him $6,559.48. He appealed to the district court. Before trial, Dominguez and the insurance carrier settled the suit for $28,000.00, and an agreed judgment was signed by the trial court. Dominguez then filed this present action against National Union Fire Insurance Company for breach of the duty of good faith and fair dealing owed by workers' compensation carriers to their insureds. After a jury trial, the trial court rendered a $322,988.36 judgment in Dominguez' favor as compensatory and exemplary damages for breach of the carrier's duty of good faith and fair dealing. The court of appeals affirmed the judgment for past mental anguish in the amount of $75,-000.00, but reversed the damages for future mental anguish and exemplary damages. 793 S.W.2d 66. Following the opinion in *Lyons v. Millers Casualty Insurance Company*, 866 S.W.2d 597 (Tex.1993), we hold that there is no evidence that National Union breached its duty of good faith and fair dealing to the insured. We thus reverse the judgment of the court of appeals and render judgment that Dominguez take nothing.[1]

Justo Dominguez worked for a company known at the time as Petty–Ray, which performed geophysical work. For the last seven years of his employment, his job involved driving a truck which vibrated the ground as a part of seismographic analysis. His job called upon him to repair the truck on occasion and some of his duties involved bending, stooping, and maintaining certain fixed positions for periods of time.

In February of 1985, Dominguez called in to work complaining of a swollen toe and a sore back. His employer instructed him to see a doctor, and he received treatment from a chiropractor. The chiropractor sent the company his diagnosis of the problem as "sciatic neuritis associated with subluxation L–4 and 5," and Dominguez was afforded benefits from the company's disability policy, which covered non-work related conditions. Over the next several months, Dominguez signed a number of forms that included a representation that the injury was not work related.

The chiropractor soon referred Dominguez to a back specialist who began regular treatment. After five months of disability, Petty–Ray encouraged Dominguez to see another doctor. That doctor diagnosed the injury as a degenerative joint disease in the lumbar area. He recommended that Dominguez return to work because of his opinion that activity might be therapeutic.

Petty–Ray terminated the disability payments, and put Dominguez on leave without pay. Dominguez returned to work on September 4, 1985, although his back was still causing him pain. In December the company terminated Dominguez for the stated reason that he missed work without informing his supervisor.

Dominguez hired an attorney in January of 1986. He had missed work to attend his grandmother's funeral, and had been unable to get through to notify his supervisor. It was his view that he had been fired because of his back problems. Rather than seek redress from Petty–Ray, however, Dominguez sent notice of an occupational disease to the Industrial Accident Board on January 27, 1986.

National Union received notice of the claim on February 24, 1986. The next day an adjusting and investigating service hired by National Union began to inquire into the claim. The claim was preliminarily completed on March 10, 1986, the date National

---

1. Because of our disposition of this case, we do not address National Union's contention that the settlement agreement of the underlying claim precluded the bad faith claim.

Union's response was due to be filed with the Board.[2] On that date, National Union filed a notice that it was controverting the claim based on the failure to report the injury as an on-the-job injury, and the failure to report the injury within 30 days.

National Union's investigator continued to investigate the claim. The record is not entirely clear when various items of information came to light, but the doctor who had initially seen Dominguez diagnosed his back pain as stemming from a degenerative condition. However, a second physician had given his opinion that Dominguez' condition was work related. From Petty–Ray, National Union learned that Dominguez had never reported the injury as work related, and in fact, as late as April 26, 1986, Dominguez submitted forms to Petty Ray's group health carrier and made an express representation that his injury was not work related.

The Board conducted a hearing, and in August of 1986 awarded $6,559.48 as a lump-sum payment, plus lifetime medical benefits. Both parties appealed. On the morning of the trial of the workers' compensation claim, National Union settled with Dominguez for $28,000. The attorneys for National Union prepared a proposed consent judgment. Dominguez' attorney struck out one of the paragraphs and the trial court rendered the agreement as modified as the judgment of the court.

The settlement in question provides in part:

In full and final compromise and settlement of this suit and all claims alleged or which might now or later have been alleged in Plaintiff's pleadings herein filed, which are incorporated by reference, in connection with the accident, injuries and incapacity involved in this suit, . . . .

The Parties agree that this suit involves questions as to the occurrence of an accident, the liability of the Defendant to pay benefits of any kind under the Workers' Compensation Act, the extent of Plaintiff's injuries and resulting incapacities and the probability of need for future medical services, and other questions; and all such issues are disputed, indefinite, uncertain, and incapable of being exactly established and determined.

The following was stricken from the agreement:

The Parties further agree that for and in consideration of the aforementioned sums, the Plaintiff herein does hereby RELEASE, REMISE, QUITCLAIM and FOREVER DISCHARGE Defendant and Employer named herein, their respective successors and assigns, servants, representatives, officers and/or employees of and from all claims, controversies, or causes of action for all claims, whether known or unknown, for injuries, damages, or any other matter, including any matter regarding the adjustment or handling of the above described suit from the time of the filing of a claim before the Industrial Accident Board by Plaintiff through the date of the signing of this Judgment.

Finally, the agreed judgment provides:

THE COURT FINDS the above Settlement Agreement to be true as to all its recitations, and to be a full, fair, and complete settlement of this cause; . . . .

This judgment is final and is a complete bar to the right of the Plaintiff, or anyone claiming under or for the Plaintiff, ever again to assert a claim or cause of action in any manner connected with the accident upon which the suit is based, for worker's compensation benefit, and all past and all future medical services . . . .

The same day that the settlement between the parties was approved and the judgment was rendered, Dominguez filed a suit for breach of the duty to handle his claim in good faith and with fair dealing. At the trial of the suit for mishandling his claim, Dominguez was the only witness to present testimony in person. When asked about the statement in the agreed judgment that liability under workers' compensation was disputed,

2. Under article 8306 § 18a, Tex.Rev.Civ.Stat. (repealed 1991), a carrier was required within 20 days of the notice injury to either pay the claim or file a statement controverting the claim. That period is now 60 days. Act of May 12, 1993, 73rd Leg., R.S., ch. 269, § 1, 1993 Tex.Gen.Laws 1197, 1198 (to be codified at Tex.Lab. Code § 409.021(c)).

uncertain, and incapable of being ascertained with certainty, he agreed that it was a truthful statement.

The case was submitted to a jury, which concluded that National Union breached the duty of good faith and fair dealing with Dominguez, causing him $75,000 in past mental anguish and $50,000 for future mental anguish. The jury further determined that National Union was consciously indifferent to Dominguez' rights and welfare and found that $175,000 in exemplary damages should be assessed. The trial court rendered judgment on the verdict in the principal amount of $322,988.

The court of appeals reversed the award of punitive damages because of a lack of evidence of National Union's conscious indifference. It also reversed the award of future mental anguish damages on a no evidence point. However, the court of appeals rejected National Union's argument that the agreement signed by the parties settling the worker's compensation claim precluded any claim for breach of the duty of good faith and fair dealing.

■ The duty of a workers' compensation carrier to handle claims in good faith and with fair dealing was established in *Aranda v. Insurance Company of North America*, 748 S.W.2d 210 (Tex.1988). A claimant who alleges a breach of this duty must establish (1) the absence of a reasonable basis for denying or delaying payment of the benefits of the policy, and (2) that the carrier knew or should have known that there was not a reasonable basis for denying the claim or delaying payment of the claim. *Id.* at 213.

The first element of the *Aranda* test, absence of a reasonable basis for denying the claim, requires an objective determination of whether a reasonable insurer under similar circumstances would have delayed or denied the claimant's benefits. *Aranda*, 748 S.W.2d at 213. The second element, that the carrier knew or should have known, is an attempt to balance the right of an insurer to reject an invalid claim and the duty of the carrier to investigate and pay compensable claims. *Id.*

The claimant has the burden of proving a negative proposition, the absence of a reasonable basis for denying a claim, of which the carrier knew or should have known. As we observed in *Lyons v. Millers Casualty Co.*, 866 S.W.2d 597 (Tex.1993), courts have had difficulty applying a traditional "no evidence" review of these elements of proof. The difficulty has centered around the rule of no evidence review that a court may consider only the evidence supporting the finding, disregarding all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965).

■ A legal sufficiency review of a bad faith claim requires that the evidence relied on by the insured as evidence of bad faith "must be such as to permit the logical inference that the insurer had no reasonable basis to delay or deny payment of the claim, and that it knew or should have known it had no reasonable basis for its actions." *Lyons*, 866 S.W.2d at 600. Unless the evidence furnishes some reasonable basis for the conclusion by reasonable minds as to the existence of the vital fact, it is no more than a scintilla, the legal equivalent of no evidence. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 62–63 (Tex.1983).

As we held in *Lyons*, evidence of insurance coverage alone does not go to the issue of the standard articulated in *Aranda*, absence of a reasonable basis for denial of the claim. A legal sufficiency analysis requires the reviewing court to give weight only to evidence supporting the judgment for the insured and reject all evidence to the contrary. However, only after an appellate court has determined what potential basis an insurance company may have had for denying a claim can the court conduct a meaningful review of whether the insured has presented evidence that the insurer lacked a reasonable basis for denying or delaying the claim. The court may then apply the traditional rules of legal sufficiency review, giving weight only to evidence in support of the judgment. "The evidence must relate to the tort issue of no reasonable basis for denial or delay in payment of a claim, not just to the contract issue of coverage." *Lyons*, 866 S.W.2d at 600.

■ The only evidence offered by Dominguez to establish bad faith was a letter sent

by a doctor to Dominguez' attorney, stating his opinion that the injury was work related.[3] While that letter is some evidence of coverage, it is not evidence of an absence of a reasonable basis for denying the claim. Dominguez presented no evidence that casts doubt on National Union's reliance on the medical professionals who diagnosed the condition as a degenerative disease, or on Dominguez' own statements on insurance forms that his condition was not work related. We conclude that there is no evidence of a breach of the duty of good faith and fair dealing. We therefore reverse the judgment of the court of appeals and render judgment that Dominguez take nothing.

DOGGETT and GAMMAGE, JJ., dissenting.

Today's opinion and the insurance company's investigation, which forms the basis for this bad faith claim, share much in common—both are perfunctory and both mislead through omission. This decision merely represents a predetermined result in search of a rationale.[1]

Important to an understanding of this decision is the identity of the parties. Justo L. Dominguez Jr. is a truck driver from Pecos, Texas, who for more than six years earned $5.00 an hour operating a special type of industrial truck for his employer, Petty–Ray Geophysical.[2] National Union Fire Insurance is a large national insurance company. A jury in Reeves County found that the insurer had acted in bad faith, the trial judge entered judgment, and the court of appeals sitting in El Paso, in relevant part, unanimously affirmed. 793 S.W.2d 66. Rejecting all of this, the majority adjusts longstanding Texas law to benefit the insurer to the considerable detriment of the truck driver.

The law is well-established that in determining a "no evidence" point, this Court "must consider only the evidence and inferences tending to support the jury's finding, viewed most favorably in support of the finding, and disregard all contrary evidence and inferences." *Havner v. E–Z Mart Stores, Inc.,* 825 S.W.2d 456, 458 (Tex.1992); *see Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex. 1965); *Cartwright v. Canode,* 106 Tex. 502, 171 S.W. 696, 698 (1914). If more than a scintilla of such evidence exists, the claim is sufficient as a matter of law, and any challenges go merely to the weight to be accorded the evidence. *Stafford v. Stafford,* 726 S.W.2d 14, 16 (Tex.1987); *In re King's Estate,* 244 S.W.2d 660, 661 (1951). Although jurors are empowered to qualitatively evaluate the credibility and weight of some evidence and conclude that it constitutes no evidence, the Texas Constitution precludes this Court from performing that task. *See* TEX.CONST. art. V, § 6; *Choate v. San Antonio & A.P. Ry. Co.,* 91 Tex. 406, 44 S.W. 69, 69 (1898).

Dismissing this law as mere "tradition," the majority asserts, without citation to any authority, that this Court has not only the authority but the duty to make determinations as to the "basis an insurance company may have had for denying a claim. . . ." 873 S.W.2d at 376. Empowered by this new, self-bestowed authority, the majority proceeds to reexamine the evidence from the perspective of the insurance company rather than, as required by the Texas Constitution, in the light most favorable to the verdict. This constitutes improper factfinding; it is a review of factual, not legal, sufficiency.

---

**3.** The dissent argues that Dominguez' testimony that he told his immediate supervisor that the injury was work related is evidence of bad faith, and yet does not explain how this information could ever have made its way to National Union. Dominguez' attorney refused to allow any interview with Dominguez, even in the presence of the attorney. Assuming that National Union should not rely on Petty–Ray's records containing Dominguez' representations that the condition was not work related, and the interviews of fellow employees, and should have interviewed Dominguez' supervisor immediately, there is nothing in the record that indicates the supervi-

sor would have supported Dominguez' position. To the contrary, the supervisor testified in his deposition that Dominguez said the injury was *not* work related.

**1.** The majority's similar contemporaneous writing in *Lyons v. Millers Cas. Ins. Co.,* 866 S.W.2d 597 (Tex.1993), offers no more support for today's opinion than the converse.

**2.** As a vibreosis operator, Dominguez ran and maintained a truck that vibrates while exploring for oil and gas.

Today's opinion maintains that the only evidence supporting a claim of bad faith was a letter sent by a doctor to Dominguez's attorney, and it simply categorizes this as evidence solely of coverage, which is declared to constitute no evidence whatsoever of bad faith. But this letter is only a part of the evidence presented to the jury on this issue. The insurer denied Dominguez's workers compensation claim on the basis that his injury was neither reported within thirty days nor reported as an on-the-job injury. This decision resulted from the recommendation of an investigator, who apparently never interviewed Dominguez's managing supervisor.[3] *See State Farm County Mut. Ins. Co. v. Moran,* 809 S.W.2d 613, 618 (Tex.App.—Corpus Christi 1991, writ denied) (failure to interview witness to events related to coverage is some evidence of breach of good faith and fair dealing). In apparent disagreement with the jury's resolution of a disputed issue of material fact, the majority writes that "National Union learned that Dominguez had never reported the injury as work related...." 873 S.W.2d at 375. This judicial finding of fact simply disregards Dominguez's testimony that he had advised his supervisor almost immediately that the injury was work-related. Indeed, this same supervisor first suggested that Dominguez see a doctor. Although claiming that Dominguez did not say it was work-related, this supervisor later confirmed that he had been promptly advised about the injury, thereby completely eliminating at least one of the insurer's two grounds for denial.[4] A proper no evidence review would acknowledge that because the jury may rightfully have believed Dominguez's testimony, this Court must treat the contrary National Union report as erroneous. Rejecting the worker's claim without ever conducting a proper investigation of the basis for the denial certainly

constitutes evidence of bad faith. *Commonwealth Lloyd's Ins. Co. v. Thomas,* 825 S.W.2d 135, 144 (Tex.App.—Dallas 1992) (evidence of inadequacy of insurer's investigation is some evidence of breach of the duty of good faith and fair dealing), *judgment set aside pursuant to settl't agr.,* 843 S.W.2d 486 (Tex.1993).

Contrary to the majority, 873 S.W.2d at 377 & n. 3, this is certainly not the only failing in the insurer's handling of this matter. Its investigator completely misrepresented the claimant's post-injury health care. Her report, for example, falsely indicates both that Dominguez did not seek immediate medical treatment from Dr. Zea and that that doctor found no physical impairment. Particularly damaging to Dominguez was the conclusion that he only once saw the doctor who concluded the injury was job-related, when treatment had actually been received on many occasions, as detailed in a four-page written summary of findings. Ironically, the majority fails to note that the doctor whose opinion National Union did rely upon saw Dominguez only once. Additionally, the investigator inaccurately reported that after claiming injury, Dominguez was employed as a body work repairman when he had, in fact, been totally unable to work since his injury.[5] Taken in the light most favorable to the judgment, the inaccuracies in this report regarding crucial elements of the claim, in addition to the investigator's failure to consult the supervisor constitute evidence of bad faith. The majority summarily declares all of this as "no evidence" without even bothering to discuss it.

Today's opinion then suggests that "Dominguez presented no evidence that casts doubt on National Union's reliance on the [doctors] who diagnosed the condition as a

---

**3.** Apparently, no contact was made by the insurer with the supervisor until a year after the initial report when he was contacted for a deposition.

**4.** The majority excuses this failing on grounds that it would not have altered National Union's decision that the injury was not work related. Yet an investigation that is so faulty or perhaps merely a subterfuge for denying coverage shows a lack of good faith and fair dealing. *See State Farm Fire & Cas. Co. v. Simmons,* 857 S.W.2d

126, 133 (Tex.App.—Beaumont 1993, writ denied) (evidence that insurer's investigation was tailored to reach predetermined outcome is some evidence of breach of duty of good faith and fair dealing).

**5.** Apparently the insurance investigator confused a job at which Dominguez had worked with Valley Motor Cadillac *before* the injury with a job he never held after the injury.

degenerative disease, or on Dominguez' own statements on insurance forms that his condition was not work related." 873 S.W.2d at 377. But this is irrelevant in a legal sufficiency inquiry. Under our law, this review must be narrowly focused on what *supports* the judgment, not what opposes it. Furthermore, at least one doctor did *not* diagnose the condition as degenerative, but rather as work-related; and there is evidence that the insurer's consideration of this professional's findings and opinions was inexcusably defective.

Additional testimony indicated that Dominguez did not understand the difference between disability and workers' compensation when preparing his insurance forms; he simply accepted the disability forms offered by his employer in order to get a paycheck. This worker, whose formal education ended after the ninth grade, was described by the trial judge as a person of "limited" intelligence. *Compare Dresser v. Lee,* 1993 WL 433292 *6 (Tex.1993) (Doggett, J., dissenting).

There is no doubt that some evidence of bad faith was presented to justify the jury's finding. The basis on which the insurer decided to controvert the claim was a slipshod report prepared by an investigator who either did not thoroughly review the case or who manipulated the facts to serve her employer. The majority today continues its practice of wearing blinders when evaluating facts not helpful to insurance companies while violating the constitutional mandate that review by this Court is limited to legal, not factual sufficiency.

Once again, as in *Boyles v. Kerr,* 855 S.W.2d 593, 606 (Tex.1993) (Doggett, J., dissenting on motion for reh'g), "excessive concern for the effect of every opinion on insurance companies seems to have become the predominant and overriding" concern of this majority. *Compare also id.* at 603 (Gonzalez, J., concurring on motion for reh'g). Given the determination of the majority to assume for itself the duties and powers of a jury, anyone—a judge, an attorney, a litigant or a legal scholar—will be hard pressed, in any given case, to understand the operative standard of appellate review—whether funda-

mental rules articulated in existing precedent govern, or whether what's really at work is some special unwritten standard of review, grounded in an overriding fear that insurers could actually be compelled to pay claims.

