**STANDARD FIRE INSURANCE COMPANY, Appellant,**

v.

**Joy Lenderman STEPHENSON, Appellee.**

**No. 09–96–033CV.**

Court of Appeals of Texas,
Beaumont.

Submitted March 13, 1997.

Decided Oct. 30, 1997.

Order Vacating Judgment and Remanding
March 19, 1998.

Reagan Wm. Simpson, Fulbright & Jaworski, Houston, for appellant.

George E. Chandler, Lufkin, Michael A. Hatchell, Ramey & Flock, Tyler, for appellee.

Before WALKER, C.J., and STOVER and HILL,[1] JJ.

## OPINION

HILL, Justice (Assigned).

The Standard Fire Insurance Company appeals from a judgment resulting from a

---

1. The Honorable John Hill, sitting by assignment pursuant to Tex. Gov't Code Ann. § 74.003(b) (Vernon 1988).

jury trial in which the jury found Standard Fire breached its duty of good faith and fair dealing by denying and delaying payment of a death benefits claim under the Texas Workers Compensation Act. Joy Lenderman Stephenson, appellee, is the widow of Douglas Stephenson, who died suddenly of a heart attack while working for Champion, Inc. The judgment awarded Mrs. Stephenson actual damages in her bad faith claim, consisting of mental anguish damages and her attorney's fees in the underlying workers' compensation claim; exemplary damages; and attorney's fees pursuant to her DTPA claim. Standard Fire presents seventeen points of error.

For reasons set forth in this opinion, we sever Mrs. Stephenson's claim for attorney's fees under the DTPA, reverse the judgment with respect to that claim, and remand that claim to the trial court for further proceedings. With respect to Mrs. Stephenson's bad faith claim, we reform the judgment to delete exemplary damages, the award of attorney's fees under the DTPA, and any prejudgment interest attributable to either the exemplary damages or the DTPA attorney's fee award, and we affirm the judgment as reformed.

## SUFFICIENCY OF THE EVIDENCE: BAD FAITH

■ Standard Fire contends in point of error one that because neither legally nor factually sufficient evidence supports the jury's finding that Standard Fire breached the duty of good faith and fair dealing, the trial court erred in overruling Standard Fire's motion for judgment notwithstanding the verdict and its motion for new trial.

### Legal Sufficiency

■ In considering and determining legal sufficiency or no evidence points of error, we must only consider the evidence, and the inferences therefrom, tending to support the jury's findings, disregarding all evidence and inferences to the contrary. *Havner v. E-Z Mart Stores, Inc.*, 825 S.W.2d 456, 458 (Tex. 1992).

Doug Stephenson was an employee of Champion Paper Mill in Lufkin and in charge of a paper-making machine. He was a very dedicated employee. On the morning of August 30, 1989, Stephenson encountered a problem with a paper machine that was costing his company close to $10,000 per hour. Except for a thirty-minute break, he and a co-worker, Michael Parks, worked to fix the problem. Around part of the machine where Stephenson was working the temperature was about 100 degrees with approximately 100% humidity. The effective heat index was roughly 130 degrees or beyond. The air in a part of the machine where Stephenson would not ordinarily have been working was stagnant and extremely hot. Sam Ellis, Jr., a former employee of Champion, described it as absolutely horrendous. Another part of the machine where Stephenson was working was described as the "hell hole." Ellis described the heat there as absolutely stifling, like walking into a blast furnace. He said the humidity in the area was so high and the air so still that sweating had no cooling effect on the body.

Stephenson skipped a lunch break to continue trying to fix the problem, saying, "We're going to do this first." Parks testified Stephenson appeared to be feeling flustered because the machine was not doing what he wanted. About five minutes after coming from a hot area, Stephenson bent down to attach a hose to a foam machine for another foaming operation. Stephenson stood up, then fell backwards. The death certificate listed the cause of his death as an acute myocardial infarction, a heart attack.

Dr. Craig Pratt, a professor of medicine at Baylor University College of Medicine, testified he is board certified in internal medicine and cardiovascular disease and is an internationally recognized authority on the cause of sudden cardiac death. He stated it was his opinion that, based upon Stephenson's elevated emotional stress, the work he was doing, and the heat conditions, the working conditions and his job environment would have been a major cause of Stephenson's death. He said it could not be argued by any reasonable person that Stephenson's death was not, at least in part, caused by the working conditions.

Karen Baker Waddill, the adjuster for the Stephenson claim, but who is no longer with

Standard Fire, testified Standard Fire basically approached heart attack claims by conducting an investigation that would disprove the claim. She said there were discussions indicating that from the beginning of the claim there was an intentional, deliberate effort upon the part of the insurance company to deny the claim. She indicated she conducted an investigation to disprove the compensability of the claim, as opposed to trying to approve it, in accordance with instructions from her supervisors.

Ms. Waddill interviewed Michael Parks, Stephenson's co-worker, shortly after Stephenson's death. A review of the interview reveals Ms. Waddill showed little interest in the heat or stress level of what Stephenson was doing leading up to his heart attack. Instead, it centered on what he was doing at the time of the attack, along with his general attitude and lack of complaints during the week and immediately preceding the attack. When Parks mentioned the heat they encountered the morning of the attack, she did not follow up with any questions except to seek to establish Stephenson could have showered had he chosen to. Waddill was aware the family was contending Stephenson's death was caused by the heat, stress, and exertion at his job. A co-worker reviewing her file inquired how specifically the complaints had been about heat problems and inquired how hot it was where Stephenson was working. She suggested medical follow-up with a doctor and attorney was needed. There was no follow-up in accordance with this suggestion. No doctor was contacted for an opinion as to whether Stephenson's death might have resulted from his working conditions until after the claim had already been controverted by Standard Fire.

There was testimony the file was closed despite the incompleteness of the investigation, because it was felt after speaking with personnel at the paper mill that Mrs. Stephenson would not pursue her claim. Ms. Waddill testified that at the time the insurer denied the claim it had not conducted a reasonable and thorough investigation upon which to deny the claim and that in her opinion it violated its duty of good faith and fair dealing.

■ An insurer breaches its duty of good faith and fair dealing when the insurer fails to attempt to effectuate a settlement where its liability has become reasonably clear. *The Universe Life Ins. Co. v. Giles,* 950 S.W.2d 48, 55 (Tex.1997) (citing TEX. INS. CODE ANN. art. 21.21, § 4(10)(a)(ii) (Vernon 1981 & Supp.1997)). The insurer may also breach its duty of good faith and fair dealing when it fails to reasonably investigate a claim in order to determine whether its liability is reasonably clear. *Id.* at 56 n. 5.

Prior to the opinion in *Giles,* the standard was that an insurer breaches its duty of good faith and fair dealing if the insurer denies a claim with no reasonable basis or fails to determine whether a reasonable basis for denial exists. *Arnold v. National County Mut. Fire Ins. Co.,* 725 S.W.2d 165, 167 (Tex.1987). The question asked of the jury, based upon that former standard, did not frame the issue specifically in terms of whether Standard Fire reasonably investigated the claim in question. Instead, when asking the jury whether Standard Fire breached the duty of good faith and fair dealing, the trial court instructed the jury that "A party fails to comply with its duty of good faith and fair dealing when—without a reasonable basis, it denies a claim, [or] without a reasonable basis, it delays payment of a claim, and it knew or should have known, based on its duty to thoroughly investigate claims, that there was no reasonable basis for denying the claim or delaying payment of the claim."

There is evidence that would show Standard Fire's investigation of Mrs. Stephenson's claim was not a reasonable one but, instead, was an investigation conducted to disprove the compensability of the claim, in accordance with instructions from the investigator's supervisors. There was also evidence that Standard Fire basically approached heart attack claims by conducting an investigation that would disprove the claim. The jury could have concluded, based upon the evidence we have outlined, that Standard Fire denied Mrs. Stephenson's claim without a reasonable basis and that its purported reliance upon its investigation was a mere pretext for denial of the claim. We hold

there was some evidence supporting the jury's finding Standard Fire breached its duty of good faith and fair dealing, regardless of whether the *Giles* standard or the *Arnold* standard is applied. *See State Farm Lloyds v. Nicolau,* 951 S.W.2d 444, 448–49, (1997).

Standard Fire contends the evidence is not sufficient to support the jury's finding of good faith and fair dealing., Basically, Standard Fire argues the evidence fails to establish its denial of Mrs. Stephenson's claim was unreasonable. It says there was a bona fide dispute as to coverage, that the evidence establishes a "simple disagreement among experts." It refers us to evidence, much of it acquired after the claim was denied, to show it had a reasonable basis for denying Mrs. Stephenson's claim.

As previously noted, there was evidence Standard Fire did not reasonably investigate this claim and medical evidence no one could reasonably question this claim was compensable. From this evidence a jury could conclude Standard Fire did not have a reasonable basis for denying Mrs. Stephenson's claim.

■ We first note that although Standard Fire refers us to evidence favorable to a negative finding to the "good faith and fair dealing" question, we are generally not to consider such evidence in connection with the "no evidence" standard of review unless such evidence is undisputed and allows only one logical inference. *See Giles,* 950 S.W.2d at 48. Since we do not find the evidence to which Standard Fire refers us to be of this character, we do not consider it in this "no evidence" review.

In support of its argument that the evidence is insufficient to support a finding of bad faith, Standard Fire refers us to numerous cases, including *Transportation Ins. Co. v. Moriel,* 879 S.W.2d 10, 17 (Tex.1994); *Republic Ins. Co. v. Stoker,* 903 S.W.2d 338, 340 (Tex.1995); *Aranda v. Insurance Co. of N. Am.,* 748 S.W.2d 210, 213 (Tex.1988); *Union Bankers Ins. Co. v. Shelton,* 889 S.W.2d 278, 287 (Tex.1994); *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Dominguez,* 873 S.W.2d 373, 376 (Tex.1994); and *Lyons v.*

*Millers Casualty Ins. Co. of Tex.,* 866 S.W.2d 597, 600 (Tex.1993).

■ In *Moriel,* 879 S.W.2d at 17–18, the Court held evidence that merely shows a bona fide dispute about the insurer's liability on the contract does not rise to the level of bad faith; that bad faith is not established if the evidence shows the insurer was merely incorrect about the factual basis for its denial of the claim, or about the proper construction of the policy; and that a simple disagreement among experts about whether the loss is one covered by the policy will not support a judgment for bad faith. We find nothing in *Moriel* to be in conflict with our holding here. The evidence showing the insurer purposefully did not conduct a reasonable investigation in accordance with a policy that such claims were not compensable shows this was not merely a case of mistaken judgment concerning liability, dispute about liability, or a disagreement among experts.

In *Stoker,* the Court held that as a general rule there can be no claim for bad faith when an insurer has promptly denied a claim that is in fact not covered. *Stoker,* 903 S.W.2d at 341. Even then, however, the Court noted there could be an exception, adding, "[n]or should we be understood as retreating from the established principles regarding the duty of an insurer to timely investigate its insureds' claims. These circumstances are not present in this case." *Id.* We note there is evidence from which the jury could have reasonably concluded these circumstances are present in this case.

In *Aranda,* the Court held a workers' compensation carrier had a duty to deal fairly and in good faith with injured employees in the processing of compensation claims. *Aranda,* 748 S.W.2d at 212–13. The Court further held that in order to assert such a claim the claimant "must establish (1) the absence of a reasonable basis for denying or delaying payment of the benefits of the policy *and* (2) that the carrier knew or should have known that there was not a reasonable basis for denying the claim or delaying payment of the claim." *Id.* at 213. We find nothing in *Aranda* inconsistent with our holding in this case.

In *Shelton,* 889 S.W.2d at 279, the Court made two findings, neither of which is relevant to the case at bar. Standard Fire's citation is to the concurring and dissenting opinion in that case.

In *Dominguez,* the Court, in finding there was no evidence of a breach of the duty of good faith and fair dealing, stated that while there was evidence the claim was compensable, there was no evidence casting doubt upon the insurer's reliance on medical professionals or on the claimant's statement that his condition was not work related. *Dominguez,* 873 S.W.2d at 377. In this case there is evidence casting doubt upon the insurer's reliance on its investigation.

In *Lyons,* the Court affirmed a court of appeals finding of no evidence to support the jury's finding of a breach of good faith and fair dealing. *Lyons,* 866 S.W.2d at 602. The Court noted the evidence at best only showed the insurer was liable under its policy but that there was no evidence the insurer lacked any reasonable basis for denying the claim where it relied on experts for the denial. *Id.* at 601. The court noted there was no showing the report of the experts relied upon by the insurer in denying coverage were not objectively prepared. *Id.* In this case there is evidence that in denying Mrs. Stephenson's claim Standard Fire relied on an investigation that was not objectively conducted. If anything, this case supports our holding that the evidence is sufficient to support the jury's finding. Again, we hold there is legally sufficient evidence to support the jury's finding that Standard Fire breached its duty of good faith and fair dealing.

### Factual Sufficiency

■ When reviewing a jury verdict to determine the factual sufficiency of the evidence, we must consider and weigh all of the evidence and should set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986) (per curiam).

■ Evidence showed that Dr. Chandra, the physician who saw Mr. Stephenson when he was brought to the hospital, told Mrs. Stephenson his death was not heat related and later issued a report stating the cause of his death was a matter of pure speculation.

Dr. Thomas Lombardo, a Beaumont cardiologist, testified he could not say what caused Mr. Stephenson's death and he agreed with Dr. Chandra the death was not heat related and that any opinion as to the cause of Mr. Stephenson's death was pure speculation.

There is evidence that in April 1990, after the claim had been controverted, Ms. Waddill sought the opinion of Dr. Adele Perlman, an M.D. employed by Standard Fire. She asked her for anything that would either refute or relate the heat at the mill to the heart attack. Dr. Perlman replied, "If the work being performed was not unusual, unduly strenuous, or in a temperature that was not markedly different than the usual temperature to which the employee was accustomed, then I would not see any causal relationship between his heart attack and his employment." Dr. Perlman also said, "On the other hand, if this man was performing very strenuous work under conditions to which he was not accustomed, then the added strain to his heart could have aggravated and precipitated the myocardial infarction."

Dr. George Morris, a retired cardiac surgeon, testified he did not believe Mr. Stephenson's death was job related. He agreed with Dr. Chandra the death was not heat related and that any opinion as to its cause was pure speculation. He also indicated agreement with Dr. Perlman's conclusion that if the work being performed was not unusual, not unduly strenuous, and not in a temperature markedly different from that to which the worker was accustomed, there would be no relationship between the employment and the death from heart attack.

Ms. Waddill testified she did not think Mrs. Stephenson could add anything that would establish the cause of Mr. Stephenson's death. Ms. Waddill believed, based upon her interview with Michael Parks, the only eyewitness to Mr. Stephenson's death, the heart attack was not compensable. She said she knew OSHA had investigated the death and found it was not related to the job. She indicated knowledge that Mr. Stephen-

son had no history of heart problems and had no medical treatment for at least three years before his death. She also knew he had made no complaints of any symptoms of ill health to Mr. Parks on the day in question. She was aware no autopsy had been performed and that acute myocardial infarction was listed on the death certificate as the cause of death. More than one expert gave an opinion that Mr. Stephenson's death was not related to his employment.

Tom Milam, Karen Waddill's supervisor at the time of her investigation, testified Standard Fire did not have a policy to deny all heart attack claims. Instead, he said, office policy is to go out and investigate these incidents, ascertain to the best of their ability what the facts are, and make a decision based upon that investigation. He said there was no policy or rule in his office that heart attack claims were to be manipulated or slanted so as to justify denial. He indicated there had never been such a practice or policy.

Martha Duey, another Standard Fire employee, also denied the existence of such a practice or policy.

Considering all of the evidence, we do not find the verdict to be so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. We overrule Standard Fire's first point of error.

### SUFFICIENCY OF THE EVIDENCE: DTPA CLAIM

Standard Fire contends in point of error two there is neither legally nor factually sufficient evidence to support the jury's finding of deceptive acts or practices. Standard Fire argues that since there was not sufficient evidence to support the jury's finding as to Standard Fire's breach of the duty of good faith and fair dealing there is also insufficient evidence to support the jury's finding of deceptive acts or practices. Inasmuch as we have found the evidence sufficient to support the jury's finding of the breach of duty of good faith and fair dealing, we overrule point of error two.

2. We apply the former rules in that this appeal was perfected prior to September 1, 1997. *See*

■ Standard Fire urges in point of error three the trial court erred in overruling its motion for judgment notwithstanding the verdict and its motion for new trial because neither legally nor factually sufficient evidence supports the jury's finding of "knowing" conduct. Standard Fire acknowledges Mrs. Stephenson did not recover any damages as a result of the jury's answer to this question. Consequently, if the evidence were not sufficient so that there was any error on the part of the trial court with respect to Standard Fire's motion for judgment notwithstanding the verdict or its motion for new trial, it was not such an error as was reasonably calculated to cause or that probably did cause the rendition of an improper judgment. Tex.R.App. P. 81(b)(1).[2] We overrule point of error three.

### SUFFICIENCY OF THE EVIDENCE: MENTAL ANGUISH

Standard Fire argues in point of error six that because neither legally nor factually sufficient evidence supports the jury's finding of past mental anguish, the trial court erred in overruling its motion for judgment notwithstanding the verdict and its motion for new trial.

Dr. Larry Pollock, a psychologist, testified Mrs. Stephenson was in a condition of chronically depressed mood. He said she was passive and dependent and that made her vulnerable to someone taking advantage of her. He said the fact that she trusted she would be treated fairly and believed in that impacted on her state of depression. He said the fact she was having difficulty getting the widow's benefits she had expected was a big complication causing her a great deal of distress. He indicated that in his opinion the necessity of having to struggle and fight for the benefits had caused Mrs. Stephenson tremendous psychological pain and anguish and suffering, in addition to prolonged depression that she otherwise would not have had. He testified the struggle had interfered seriously with her ability to go through the normal grieving and mourning process. He stated all of the trauma Mrs. Stephenson had expe-

*Final Approval of Revisions to the Texas Rules of Appellate Procedure,* 60 Tex. B.J. 876 (1997).

rienced was related to the fact that she honestly expected, given the tenure her husband had with Champion and his long-standing relationship to the company, things would have been treated differently.

He mentioned that her sister-in-law stated, in 1991, Mrs. Stephenson was no longer the bubbly, sociable, outgoing person she was prior to her husband's death and she tended to severely restrict her social activities, participating mainly in family gatherings where she no longer appeared to enjoy the company of her relatives as she previously had.

Pollock indicated that in his opinion Mrs. Stephenson would look back on the period after her husband's death and struggling with the insurance company as having been a really prolonged period of misery that would haunt her for a long, long time, the rest of her life.

Sam Ellis, a union representative, testified Mrs. Stephenson was terrified about filing a workman's compensation claim.

■ Standard Fire argues Mrs. Stephenson cannot recover damages for mental anguish that might have been caused by its denial of her claim because "[s]uch feelings arise whenever a claim is denied and litigation ensues; thus, they cannot support recovery of mental anguish damages. If they did, mental anguish damages would be automatically recoverable in every coverage dispute."

Standard Fire's argument is not correct. First, if the insurer has not been guilty of breaching its duty of good faith and fair dealing, such damages would not be recoverable. If the insurer does breach its duty of good faith and fair dealing, the fact that everyone it injures in that way suffers from some mental anguish, which may not rise to a compensable level, does not make such damages not recoverable for those who suffer a compensable level of mental anguish.

Standard Fire relies on the opinion of the Texas Supreme Court in the case of *Parkway Co. v. Woodruff,* 901 S.W.2d 434 (Tex. 1995). The case involved a suit brought by a couple relating to the flooding of their home. *Id.* at 436. The only evidence of mental anguish related to the couple being upset and disturbed—what the Supreme Court termed

as "mere emotions." *Id.* at 445. The Court held that evidence of the flooding of the couple's home, together with only a showing of mere emotions, did not constitute sufficient evidence to support an award of damages for mental anguish. *Id.* The Court stated, however, that an award of mental anguish damages will survive a legal sufficiency challenge when the plaintiff has introduced direct evidence of the nature, duration, and severity of their mental anguish, thus establishing a substantial disruption in the plaintiff's daily routine. *Id.* at 444. The Court also stated a plaintiff might present evidence of a high degree of mental pain and distress that is more than mere worry, anxiety, vexation, embarrassment, or anger. *Id.*

Standard Fire also refers us to the case of *Saenz v. Fidelity & Guar. Ins. Underwriters,* 925 S.W.2d 607, 614 (Tex.1996). In that case the only testimony in support of plaintiff's mental anguish damages was her worry about losing her home and who was going to pay future medical bills throughout her lifetime. *Id.* Based upon *Parkway,* the Court stated the evidence was insufficient to support an award of damages for mental anguish. *Id.* The Court stated this court must conduct an evidentiary review with respect to the amount of the damages. We have reviewed the evidence as set forth above and find that a reasonable jury could determine $ 150,000 is fair and reasonable compensation for the mental anguish suffered by Mrs. Stephenson under the circumstances presented. Standard Fire really makes no attack on the amount awarded as mental anguish damages, merely that the mental anguish suffered by Mrs. Stephenson is not compensable.

Finally, Standard Fire refers us to the case of *Giles,* 950 S.W.2d at 48. In that case the Court refers back to its opinion in *Parkway* and states that in bad faith cases mental anguish damages are limited to those cases in which the denial or delay in payment of a claim has seriously disrupted the insured's life. *Id.* at 54.

■ We find the evidence is legally and factually sufficient to support the jury's verdict of damages for mental anguish. Standard Fire argues the evidence does not dem-

onstrate a substantial disruption in the plaintiff's daily routine. We believe the testimony outlined above supports a reasonable inference that Mrs. Stephenson's depression and grief, prolonged by Standard Fire's bad faith, resulted in a substantial disruption in her daily routine. Even if it did not, we hold it constitutes evidence of a high degree of mental pain and distress that is more than mere worry, anxiety, vexation, embarrassment, or anger. We overrule point of error six.

## ATTORNEY'S FEES IN UNDERLYING CLAIM

Standard Fire argues in point of error seven that because Mrs. Stephenson may not recover her attorney's fees in the underlying worker's compensation claim as part of her damages in this case, the trial court erred in overruling its motion for judgment notwithstanding the verdict; its motion to modify, correct, or reform the judgment; and its objection to the charge on that issue.

■■■ In Texas attorney's fees are generally not recoverable in the absence of a specific statutory or contractual provision. *New Amsterdam Cas. Co. v. Texas Indus., Inc.*, 414 S.W.2d 914, 915 (Tex.1967). This court has held this is true even where they are sought, not as attorney fees in the case at bar, but as damages stemming from prior litigation. *Choate v. Murphy*, 125 S.W.2d 413, 415 (Tex.Civ.App.—Beaumont 1939, no writ). However, this court has subsequently held such fees may be recoverable where the natural and proximate results and consequences of prior wrongful acts have been to involve a plaintiff in litigation with and against third parties and other parties. *Texas Beef Cattle Co. v. Green*, 883 S.W.2d 415, 430 (Tex.App.—Beaumont 1994), *rev'd on other grounds*, 921 S.W.2d 203 (Tex.1996). *See also Powell v. Narried*, 463 S.W.2d 43, 46 (Tex.Civ.App.—El Paso 1971, writ ref'd n.r.e.). Another court has held this rule applies even if the defendant's wrongful act did not lead to litigation between the appellee and a third party. *Nationwide Mut. Ins. Co. v. Holmes*, 842 S.W.2d 335, 341–42 (Tex. App.—San Antonio 1992, writ denied).

■■■ Standard Fire questions whether Texas has really adopted this rule, citing several cases it claims have rejected the rule, including *Peterson v. Dean Witter Reynolds, Inc.*, 805 S.W.2d 541, 549 (Tex.App.—Dallas 1991, no writ); *Cupples Coiled Pipe, Inc. v. Esco Supply Co.*, 591 S.W.2d 615 (Tex.Civ. App.—El Paso 1979, writ ref'd n.r.e.); *Dalton Steamship Corp. v. W.R. Zanes & Co.*, 354 S.W.2d 621, 624 (Tex.Civ.App.—Fort Worth 1962, no writ); *Choate*, 125 S.W.2d at 415; and *Sherrick v. Wyland*, 14 Tex.Civ. App. 299, 37 S.W. 345 (1896, no writ). We believe the better rule is that a plaintiff such as Mrs. Stephenson should be able to recover the damages suffered as a result of her insurer's wrongful act and should not be foreclosed from recovering such damages simply because the damages were attorney's fees. *See Holmes*, 842 S.W.2d at 342. Based upon this rule, we hold Mrs. Stephenson may recover her attorney's fees in her prior workers' compensation claim that she incurred as a consequence of the wrongful act of Standard Fire.

■■■ Standard Fire contends even if there is such a rule it only applies if the plaintiff was engaged in litigation with a third party, and that the rule does not apply where, as here, the attorney's fees occasioned by its wrongful act were incurred in litigation with Standard Fire rather than a third party. It is true that the exception to the rule of attorney's fees not being recoverable is generally stated as involving fees incurred in prior litigation with a third party occasioned by the wrongful act of the defendant. However, except for those cases rejecting the exception altogether, we are aware of no Texas case, and Standard Fire does not refer us to any, specifically holding the exception does not apply in an insurance bad faith case where the attorney's fees incurred by the defendant's wrongful act were incurred in litigation with the insurer itself. We know of no reason why Standard Fire should not be responsible for the damages incurred by Mrs. Stephenson as a result of its wrongful act merely because the damage was unnecessarily-incurred attorney's fees. We therefore hold that in a bad faith action an insured may recover attorney's fees incurred as a result of the insurer's bad faith, where those

fees were incurred in prior litigation between the insurer and the insured. We overrule point of error seven.

## SUFFICIENCY OF THE EVIDENCE: EXEMPLARY DAMAGES

In points of error four, five and eight, Standard Fire asserts the evidence is insufficient to support the award of exemplary or punitive damages. "[P]unitive damages can be awarded for bad faith only when an insurer was actually aware that its actions involved an extreme risk—that is, a high probability of serious harm, such as death, grievous physical injury, or financial ruin...." *Giles,* 950 S.W.2d at 57. In this case there is no evidence there was ever any extreme risk to Mrs. Stephenson of a high probability of death, grievous physical injury, or financial ruin. Consequently, we hold there is no evidence to support the award of exemplary damages.

Mrs. Stephenson contends the award of exemplary damages is appropriate in light of the jury's finding that Standard Fire's conduct was intentional and based upon malice, and in view of the psychological injury to Mrs. Stephenson and the reduction in value of her claim. While a reasonable argument may be made for the imposition of exemplary damages under these facts, it appears from the Texas Supreme Court's opinion in *Giles* that more is required.

We sustain points of error four, five and eight, as they relate to Standard Fire's overall claim that under the facts of this case Mrs. Stephenson is not entitled to recover exemplary damages. In view of our determination as to this issue, we need not consider any other issues raised by these points of error.

In points of error eleven and seventeen, Standard Fire presents points of error relating to the imposition of exemplary damages. In view of our determination that Mrs. Stephenson may not recover an award of exemplary damages, we need not determine points of error eleven and seventeen.

## EVIDENTIARY ISSUES

Standard Fire argues in point of error nine the trial court erred by excluding from evidence an exhibit and related testimony concerning the recommendation of the prehearing officer to deny benefits and the Industrial Accident Board's denial of benefits. These matters all occurred after Standard Fire had denied Mrs. Stephenson's claim. The Texas Supreme Court has held in a bad faith case that whether there is a reasonable basis for the denial of a claim must be judged by the facts before the insurer at the time the claim was denied. *Viles v. Security Nat'l Ins. Co.,* 788 S.W.2d 566, 567 (Tex.1990). Consequently, testimony concerning what occurred at the Industrial Accident Board after the claim was denied has no relevance to the issue of Standard Fire's bad faith. We overrule point of error nine.

Standard Fire insists in point of error ten the trial court erred by admitting into evidence Karen Waddill's expert testimony on the existence of bad faith conduct because Mrs. Stephenson offered no evidence of good cause for the failure to designate her as an expert witness. We hold that in view of Ms. Waddill's testimony concerning the biased nature of the investigation conducted by her on behalf of Standard Fire, if there were any error in the trial court allowing her to summarize her testimony by characterizing that investigation as unreasonable and, therefore, that Standard Fire breached the duty of good faith and fair dealing, such error was not such error as was reasonably calculated to cause or that probably did cause the rendition of an improper judgment. TEX. R.APP. P. 81(b)(1). We overrule point of error ten.

## THE CHARGE

Standard Fire asserts in point of error twelve the trial court erred in overruling its objection to the definition of the term "knowingly" in Question 4 of the Court's charge, but acknowledges Mrs. Stephenson did not recover any damages as a result of the jury's answer to this question. Consequently, any error was not such an error as was reasonably calculated to cause or that probably did cause the rendition of an im-

proper judgment. TEX.R.APP. P. 81(b)(1). We overrule point of error twelve.

## ELECTION OF REMEDIES

■ Standard Fire insists in point of error sixteen the trial court erred in overruling its motion to modify, reform, or correct the judgment because Mrs. Stephenson was not required to elect her remedies but, instead, was awarded exemplary damages under a common-law cause of action as well as legal fees available only under statutory causes of action. Because of the remedial policies underlying the DTPA, a party is entitled to recover attorney's fees for the successful prosecution of a DTPA claim, even if recovery is on another theory. *Orkin Exterminating Co. v. Williamson*, 785 S.W.2d 905, 913 (Tex.App.—Austin 1990, writ denied). Additionally, in view of our determination that there is no evidence to support the award of exemplary damages, Mrs. Stephenson will not recover both exemplary damages and attorney's fees under the DTPA. We overrule point of error sixteen.

## ATTORNEY'S FEES IN THIS CAUSE

■ Standard Fire contends in point of error thirteen the trial court erred in overruling its objection to submitting legal fees as a percentage rather than a dollar amount. In answer to a question in the court's charge, the jury found a reasonable fee for the necessary services of Mrs. Stephenson's recovery was 33⅓%. The Texas Supreme Court has recently held that to recover attorney's fees under the DTPA, the plaintiff must prove the amount of fees was both reasonably incurred and necessary to the prosecution of the case at bar, and must ask the jury to award the fees in a specific dollar amount, not as a percentage of the judgment. *Arthur Andersen & Co. v. Perry Equipment Corp.*, 945 S.W.2d 812, 819 (Tex.1997). We sustain point of error thirteen.

■ Standard Fire asserts in point of error fourteen the trial court erred in overruling its motion to modify, reform, or correct the judgment because the judgment erroneously awarded prejudgment interest on all damages, including exemplary damages and legal fees. Because of our holding with respect to exemplary damages and attorney's fees under the DTPA, we must sustain this point of error and reform the judgment to award prejudgment interest solely on the amount of actual damages. We do not by this holding reach the merits of Standard Fire's contention that such interest may not be imposed on exemplary damages or on attorney's fees under the DTPA.

Standard Fire contends in point of error fifteen that because the judgment awarded excessive legal fees in several respects, the trial court erred in overruling its motion to modify, reform, or correct the judgment. In view of our holding that it was improper for the jury to determine attorney's fees as a percentage of Mrs. Stephenson's award, we need not consider this point of error.

We sever Mrs. Stephenson's claim for attorney's fees under the DTPA, reverse that portion of the judgment awarding Mrs. Stephenson attorney fees under the DTPA, and remand her claim for attorney's fees under the DTPA to the trial court for further proceedings. With respect to Mrs. Stephenson's bad faith claim, we reform the judgment to delete the award for exemplary damages, for attorney's fees under the DTPA, and for any prejudgment interest attributable to those claims. Therefore, Mrs. Stephenson's actual damages shall be $215,000.00 and pre-judgment interest shall be $114,273.97. Further, this judgment in the sum total amount of $329,273.97 shall bear post-judgment interest at the rate of ten percent (10%), compounded annually beginning on the date October 4, 1995, and ending the day the judgment is fully paid. We affirm the judgment as reformed.

AFFIRMED AS REFORMED IN PART; REVERSED AND REMANDED IN PART.

## ORDER

PER CURIAM.

We have before the Court a "Joint Motion Under Texas Rule of Appellate Procedure 42.1", in which the parties ask this Court to vacate our judgment and the judgment of the trial court without reference to the merits and remand the cause for entry of an agreed

take-nothing judgment in accordance with the parties' settlement agreement. The Court finds the motion complies with Tex. R.App.P. 42.1(a)(1). The parties also request us to withdraw our opinion of October 30, 1997, in this appeal

It is therefore ORDERED that the motions for rehearing are GRANTED without reference to the merits. Our judgment of October 30, 1997, is VACATED. The judgment of the trial court is VACATED and the cause is REMANDED to the 217th District Court of Angelina County, Texas, for further proceedings regarding the entry of judgment in accordance with the settlement agreement of the parties. Costs shall be assessed against the party incurring such costs. The request to withdraw our opinion of October 30, 1997, is DENIED. We direct the Clerk of the Court of Appeals to release our October 30, 1997, opinion for publication.

VACATED AND REMANDED.